## PEOPLE *v.* KRUGMAN.

1. TRIAL—REQUEST TO CHARGE—INSTRUCTIONS.
   It is not reversible error for the trial judge to refuse to give a request to charge that is inaccurate and misleading.

2. CRIMINAL LAW—INSANITY—PROXIMATE CAUSE.
   There must be causal connection between a mental abnormality or disease and the criminal act in order for the defense of insanity to relieve the accused of criminal responsibility.

3. SAME—PRESUMPTION OF SANITY.
   A defendant in a prosecution for crime is presumptively sane.

4. SAME—INSANITY—BURDEN OF PROOF.
   The burden of proof is on the prosecution to establish beyond a reasonable doubt the sanity of a defendant charged with crime, once there is any evidence introduced of insanity.

5. ROBBERY—ARMED ROBBERY—INSANITY—EVIDENCE.
   Circuit judge's refusal to direct a verdict of not guilty in prosecution for armed robbery by reason of insanity, there having been undisputed testimony of psychiatrist that defendant was insane at the time crime was committed *held*, proper, where there was other testimony, including that of defendant herself and another participant in the crime, showing her behavior and state of mind, from which jury could have found defendant sane at the time, as the jury was not bound by the expert's testimony (CLS 1961, § 750.529).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 525.
[2] 21 Am Jur 2d, Criminal Law § 31 *et seq.*
[3] 21 Am Jur 2d, Criminal Law §§ 50, 52.
[4] 21 Am Jur 2d, Criminal Law §§ 50–53.
[5] 21 Am Jur 2d, Criminal Law §§ 65, 69.
[6] 21 Am Jur 2d, Criminal Law § 127.

6. Criminal Law—Separate Trial—Discretion of Court—Moot Objection.

> Objection of appellant to joint trial of herself and 2 defendants on charge of robbery armed that requiring her to stand joint trial was an abuse of discretion on the part of the trial court as she would not then be able to have the testimony of the other defendants *held*, untenable, where both of the other defendants took the stand and testified, the objection then being mooted (CLS 1961, § 750.529, CL 1948, § 768.5).

Appeal from Oakland; Ziem (Frederick C.), J. Submitted October 5, 1965. (Calendar No. 2, Docket No. 50,707.) Decided April 5, 1966. Rehearing denied June 8, 1966.

Dorothy Krugman was convicted of robbery armed. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,* Prosecuting Attorney, and *Thomas G. Plunkett,* Chief Appellate Lawyer, for plaintiff.

*Bruce O. Wilson,* for defendant.

Souris, J. Defendant appeals from her conviction by an Oakland county circuit court jury, in October, 1963, of an armed robbery[1] allegedly committed December 1, 1962. Three questions are raised on this appeal.

I.

Defendant pleaded not guilty and also raised the defense of insanity. She argues that the circuit judge erred in refusing to give this requested instruction:

"10. I further instruct you that the two tests used in determining the legal insanity of an accused,

---

[1] CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).

namely, that of knowing the difference between right and wrong and that of the irresistible impulse to commit a wrongful act are legal tests that have been known to the law for many years, but now that science has more recently enlarged and expanded its knowledge of the diseases of the mind, the more enlightened viewpoint is expressed in a new and more modern rule of law called 'The Durham Rule of Law on Legal Insanity', and I instruct you that if you find in this case that the defendant, Dorothy Krugman, is, in fact, suffering from a mental disease, then you must find her not guilty by reason of insanity, even though you find that she may be able to distinguish between right and wrong, or that she did not have an irresistible impulse to commit the act in question, because under this viewpoint the test is that an accused is not criminally responsible if her unlawful act is the product of a mental disease or mental defect."

The Durham rule was announced in the case of *Durham* v. *United States* (1954), 94 App DC 228 (214 F2d 862, 874, 875, 45 ALR2d 1430), in these terms (pp 240, 241):

"The rule we now hold must be applied on the retrial of this case and in future cases is not unlike that followed by the New Hampshire court since 1870. [See *State* v. *Pike,* 49 NH 399.] It is simply that an accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect.   *   *   *
"[A jury's] task would not be completed upon finding   *   *   *   that the accused suffered from a mental disease or defect.  He would still be responsible for his unlawful act if there was no causal connection between such mental abnormality and the act."

A comparison of defendant's requested instruction with the language of the District of Columbia Court of Appeals makes it readily apparent that

defendant's statement of the Durham rule is inaccurate and misleading, insofar as it tells the jury that "if you find in this case that the defendant, Dorothy Krugman, is, in fact, suffering from a mental disease, then you must find her not guilty by reason of insanity". What is lacking, of course, is the Durham *caveat* that there must also be a causal connection between the mental abnormality and the criminal act. Since there is no authority for the charge as requested by defendant, the circuit judge did not err in refusing to give it. See *Hakkers* v. *Hansen* (1953), 337 Mich 620, 625, and cases there cited.

Had defendant properly requested a charge in accordance with the *Durham* rule, our task would have been somewhat different. Then we would have been obliged to decide whether this Court in the exercise of its common-law authority should adopt a new test for determining criminal responsibility or continue to adhere to the venerable, if not venerated, right-wrong test and the irresistible impulse test. See *People* v. *Durfee* (1886), 62 Mich 487. When, and if, such a choice is squarely presented to us, we shall have to review the desirability of changing the law in Michigan with regard to criminal responsibility not only in light of decisions like *Durham* and *United States* v. *Freeman* (CA 2, 1966), 357 F2d 606,[2] but also with regard to the principle announced, and thence seemingly overlooked, in *People* v. *Garbutt* (1868), 17 Mich 9, 23 (97 Am Dec 162):

"* * * if it appeared from the evidence that defendant was afflicted with insanity, and such affliction

---

[2] In *Freeman* the second circuit court of appeals adopted the American Law Institute's definition of criminal responsibility: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

was the efficient cause of the act, he ought to be acquitted by the jury."

## II.

A criminal defendant is presumptively sane. However, once there is any evidence introduced of insanity, the burden of proof is on the prosecution to establish defendant's sanity beyond a reasonable doubt. *People* v. *Garbutt, supra; People* v. *Eggleston* (1915), 186 Mich 510.

A psychiatrist called in defendant's behalf testified that in his opinion defendant did not know, at the time of the alleged crime, the difference between right and wrong with respect to the criminal act charged against her. At the close of proofs defendant moved for a directed verdict of not guilty by reason of insanity, alleging that the doctor's testimony was uncontroverted. Defendant assigns as error the circuit judge's denial of this motion.

However valid defendant's contention might be had there been no record basis for the jury to discount the doctor's testimony, as this case of Krugman is presented to us for review there is evidence from which the jury properly could have found defendant sane. Defendant herself took the stand and testified of the events which occurred at the time of the crime and of her somewhat unconventional view of social mores. One of the participants in the crime also testified concerning defendant's behavior both before and after the crime. The jury is the ultimate judge of defendant's sanity at the time of the crime, and in this case, since it had before it evidence of defendant's behavior and state of mind upon the basis of which it could have found defendant sane at that time, it was not bound by the expert opinion testimony of the doctor. See *Vial* v. *Vial* (1963), 369 Mich 534, 536. Thus the

circuit judge did not err in refusing to direct a verdict of not guilty by reason of insanity.

## III.

Finally, while recognizing that it lies within the sound discretion of the circuit judge to decide whether joint defendants are to be tried separately, defendant argues that it was an abuse of discretion for the circuit judge to refuse to grant defendant Krugman a trial separate from her two codefendants.[3] Defendant's counsel on this appeal, who was not her counsel at trial, argues that trial counsel had prepared his case on the assumption that the other two defendants involved would be permitted, prior to trial, to plead guilty of the crime charged or of a lesser offense. This assumption was based upon trial counsel's alleged "understanding" of what "appeared" to be the prosecutor's position at conferences held prior to trial.

However, the record shows that trial counsel's concern over a joint trial was based upon his apprehension that in such a trial he would not be able to secure the testimony of the other defendants. As a matter of fact, both of the other defendants took the stand and testified, and thus the only record objection which defendant made to a joint trial was mooted. We can find no reversible error on the record made.

Affirmed.

T. M. KAVANAGH, C. J., and DETHMERS, KELLY, SMITH, O'HARA, and ADAMS, JJ., concurred with SOURIS, J.

BLACK, J., concurred in result.

---

3 CL 1948, § 768.5 (Stat Ann 1954 Rev § 28.1028).