PEOPLE *v.* MORRIS.

OPINION OF THE COURT.

1. Criminal Law—Insanity—Test.

Insanity is a defense to prosecution for crime if the defendant, by reason of disease, was not capable of knowing he was doing wrong in the particular act, or if he had not the power to resist the impulse to do the act by reason of disease or insanity; that the unlawful act is the product of mental disease or defect does not make out the defense of insanity.

References for Points in Headnotes
[1]  21 Am Jur 2d, Criminal Law § 31 *et seq.*
[2–5]  29 Am Jur 2d, Evidence § 408 *et seq.*

2. Same—Evidence—Use of Suppressed Evidence.

   Denial of motion for new trial where prosecutor used a pistol, previously suppressed from evidence, in examining witnesses for the purpose of identification of the type and demonstrating the operation of the weapon used in armed robbery and kidnapping *held*, not to be prejudicial error, where there was no indication to the jury that the weapon used for demonstration was the one used in the crimes and the misconduct of the prosecutor did not result in a miscarriage of justice (CL 1948, §§ 750.349, 769.26; CLS 1961, § 750.529).

DISSENTING OPINION.

HOLBROOK, J.

3. Criminal Law—Evidence Exhibited to Jury But Not Offered As Evidence.

   *Evidence exhibited to the jury but not offered or introduced is considered as evidence.*

4. Same—Evidence—Use of Suppressed Evidence for Demonstration Purposes—Words and Phrases—Suppressed.

   *Use of pistol, which had been suppressed from evidence because it was obtained by an unlawful search and seizure, for demonstration purposes by assistant prosecuting attorney was improper because the word "suppressed" means effectively to prevent from using.*

5. Same—Pistols—Suppressed Evidence—Due Process.

   *Pistol suppressed from evidence may not be used for any evidential purpose in a criminal trial; to do so would be to deny due process.*

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted Division 3 November 9, 1967, at Grand Rapids. (Docket Nos. 3,137, 3,138.) Decided March 29, 1968.

Judie Arlene Morris was convicted of armed robbery and kidnapping. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Donald W. Burge*,

Prosecuting Attorney, and *John E. Fitzgerald*, Assistant Prosecuting Attorney, for the people.

*Charles J. Daudert*, for defendant.

Burns, J. Defendant was charged by separate informations with the armed robbery[1] and kidnaping[2] of George Hoffman, a gasoline station attendant in the city of Kalamazoo. The defendant was found guilty by a jury on both charges and sentenced to prison for 4 to 10 years.

The defendant's motion to suppress from evidence the .22-caliber pistol allegedly used in the crimes was granted by the trial court on the basis that the weapon was obtained by an unlawful search and seizure. During the trial the prosecution made no attempt to offer the weapon into evidence; it was employed, however, over objection, to demonstrate to the jury the type and operation of the weapon used in the crimes. Defendant's motion for a new trial on this ground was denied.

Defendant entered a defense of insanity and requested that the jury be instructed in accordance with the test for insanity established by *Durham* v. *United States* (1954), 94 App DC 228 (214 F2d 862, 45 ALR2d 1430). The trial court declined to give the instruction requested.

Defendant raises two issues on appeal:

"(1) Did the trial court err in refusing to grant defendant's request to charge the jury under the *Durham* or 'product of mental illness' rule on the issue of insanity at the time of commission of the alleged offenses?

"(2) Did the trial court err in refusing to grant defendant's motion for new trial on the grounds the

---

[1] CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).
[2] CL 1948, § 750.349 (Stat Ann 1954 Rev § 28.581).

prosecution had used a .22-caliber pistol, previously suppressed from the evidence, in examining witnesses for purposes of identification of the type and demonstrating the operation of the weapon used in the alleged crimes, where said weapon was not introduced into evidence?"

Regarding the *Durham* rule, the Michigan Supreme Court recently stated in *People* v. *Krugman* (1966), 377 Mich 559, 562:

"Had defendant properly requested a charge in accordance with the *Durham* rule, our task would have been somewhat different. Then we would have been obliged to decide whether this Court in the exercise of its common-law authority should adopt a new test for determining criminal responsibility or continue to adhere to the venerable, if not venerated, right-wrong test and the irresistible impulse test. See *People* v. *Durfee* (1886), 62 Mich 487. When, and if, such a choice is squarely presented to us, we shall have to review the desirability of changing the law in Michigan with regard to criminal responsibility not only in light of decisions like *Durham* and *United States* v. *Freeman* (CA2, 1966), 357 F2d 606, but also with regard to the principle announced, and thence seemingly overlooked, in *People* v. *Garbutt* (1868), 17 Mich 9, 23 (97 Am Dec 162)."

The instant case is controlled by *People* v. *Durfee, supra,* and the trial court properly instructed the jury.

Although defendant's second assignment of error is meritorious it is without prejudicial consequence. When the defendant's attorney discovered that the gun being used for demonstration purposes was in fact the pistol suppressed from evidence, he did not move for a mistrial but moved that the gun be removed from the courtroom, and his motion was granted. Even the court expressed surprise upon

learning the true identity of the pistol being used
for demonstration purposes, and stated: "I don't
think the jury has any idea it is the same gun. I
think it is best just to say no more about it." There
was no indication to the jury that the weapon in
the courtroom was the one used in the crimes.

The action of the assistant prosecutor did con-
stitute misconduct and bordered on contempt. How-
ever, a thorough review of the record convinces us
that this misconduct did not result in a miscarriage
of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev
§ 28.1096).

Affirmed.

LESINSKI, C. J., concurred with BURNS, J.

HOLBROOK, J. (*dissenting*). As my brother judges
stated in their opinion, "the defendant's motion to
suppress from evidence the .22-caliber pistol al-
legedly used in the crimes was granted by the trial
court on the basis that the weapon was obtained
by an unlawful search and seizure." The assistant
prosecuting attorney in presenting the people's case
used the suppressed gun for demonstration pur-
poses. Its similarity in type and operation was
demonstrated to the jury by questions put to wit-
nesses. Although the suppressed gun was purport-
edly used for demonstration purposes, a reference
to the testimony of Mr. Thomas Censke from whose
home the defendant obtained the weapon discloses
the following:

(Questioning by the assistant prosecuting attor-
ney)
"*Q.* Did you have occasion to see the defendant
here, do you recall, prior to January 19th?
"*A.* That weekend, yeah. * * *
"*Q.* She came out to your home?
"*A.* Yes, sir. * * *

"*Q.* Now, did you have a .22-caliber pistol, automatic pistol in your home?

"*A.* It was there, yes, sir.

"*Q.* When was the first time that—well, did it ever disappear?

"*A.* Well, the first time I knew it was gone was after I got home and heard this on TV and I checked to see—

"*Q.* Was that January 19th?

"*A.* I believe it was.

"*Q.* Did you check your home at that time?

"*A.* Yes, sir.

"*Q.* Did you find the pistol?

"*A.* No, sir, it was gone.   *   *   *

"*Q.* The gun wasn't yours, I see. Now I am going to show you what is a .22-caliber automatic. *Is that the type of gun it was?*

"*A.* Yes, sir.

"*Q. It is a rather large .22, isn't it? Is it not?*

"*A.* Yeah.

"*Q.* Now, do you have any idea how *this gun* got out of your house?

"*A.* Well, I guess what I told the Portage police, as near as I can figure, just Judie must just have run on to it and just up and took it." (Emphasis supplied.)

The reference in questioning by the assistant prosecuting attorney to "this gun" may very well have been a reference to the suppressed gun used by the defendant in the crimes. What the jury understood from the questioning, no one knows.

When the suppressed gun was first used by the assistant prosecuting attorney, defense counsel objected on the ground that it was not material. The objection was overruled and the suppressed gun was used by the assistant prosecuting attorney in questioning other witnesses until a time when it was discovered by defense counsel that the gun was in fact the suppressed gun. At that time it was or-

dered removed from the courtroom by the trial judge.

It has been ruled in Michigan that evidence exhibited to the jury but not offered or introduced is to all intents and purposes considered as evidence. *People* v. *Rozewicz* (1924), 228 Mich 231. Also, see 46 ALR2d 1423. Conversely, in the instant case it cannot be said that the use of the suppressed gun for demonstration purposes was not prejudicial because it was subject to being admitted.

The question arises—can the people use suppressed evidence for demonstration purposes? The word "suppress" means to effectively prevent from using, and officials who have possession of illegally obtained evidence are prohibited from using such evidence. *Rodgers* v. *United States* (DC Cal, 1958), 158 F Supp 670, 680. This statement of law is not only logical but required in view of the ruling of the United States Supreme Court in the case of *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933). In order to effect due process the suppressed gun in the instant case could not be used for any evidential purpose.

The prevailing opinion approves a procedure that would permit the use of suppressed evidence in court, inadmissible by direct offer, thus allowing entry through the back door that which has been refused entry through the front door.

This writer is constrained to vote for reversal and remand for new trial.