Richard Franklin RUNNION, Appellant
(Plaintiff below),

v.

Jesse Lee KITTS and the Wyoming State
Highway Department, State of Wyoming,
Appellees (Defendants below).

No. 4333.

Supreme Court of Wyoming.

Feb. 28, 1975.

Harry E. Leimback, Casper, for appellant.

William S. Bon, Casper, for appellees.

Before McCLINTOCK, RAPER and THOMAS, JJ.

RAPER, Justice.

It was a late February afternoon when plaintiff-appellant in this case was driving with two passengers on Highway 487 between Casper and Medicine Bow, proceeding south toward the Kerr-McGee mine site where they were employed. Defendant-appellee Kitts, an employee of the defendant-appellee, Wyoming State Highway Department, was driving a snowplow, mounted on a dump truck, he being assigned to plow and sand Highway 487 in the area of Shirley Rim. He was working in a southerly direction but about to turn around and was headed into an area on the west side of the road where he could reverse the direction of his vehicle.

There was an intermittent foggy condition; plaintiff came out of a fog bank, saw the truck, slammed on his brakes and according to measurements left heavy skid marks for a distance of 183 feet before ramming into the right rear side of the truck, near the right rear wheels on the right side of the highway. He and his passengers were all injured and sued the defendants-appellees. At the trial of the case, the jury returned a verdict for this plaintiff's two passengers but denied him any recovery, obviously on the basis of his contributory negligence, so he appeals.

Other facts may be developed as appropriate during the court's disposition of the case. Plaintiff complains that the trial court was in error in allowing an unqualified highway patrolman to testify for the defendants as to the speed of plaintiff's vehicle, made mistakes in giving two instructions and should have submitted separate verdicts against each defendant for the consideration of the jury, rather than a joint one.

Plaintiff not only does not believe the highway patrolman qualified as an expert but also complains that the patrolman's skid tests were conducted under conditions differing from those existing at the time of the accident, were improperly done as well and the patrolman as an expert—if he was one—failed to take all material factors into consideration. Plaintiff claims it was reversible error to admit any of the patrolman's testimony. Plaintiff, after repeated objections during the course of the testimony, moved to have the testimony of the witness stricken for all the reasons stated, which motion the court took under advisement but never made a ruling; the motion was never renewed. For all practical pur-

poses it can be considered overruled because the testimony was not stricken.

In the qualification of the highway patrolman, it developed that he had 13 years' service with the State of Wyoming in that capacity, during which time he had investigated many accidents and attended training courses in automobile accident investigation. He was the one who responded to and investigated the collision at issue and made all the measurements, including the determination that there were tire skid marks for a distance of 183 feet left by plaintiff's car, there being no break in them from beginning to end. The witness knew how to work a speed calculator from test skids and had training in ascertaining the minimum speed computed in that fashion from the length of the questioned skid marks.

The admissibility of testimony of an expert rests largely upon the trial judge's discretion and that discretion is reviewable only for abuse. McCormick, et al. on Evidence, 2d Ed., H.B., § 13, p. 30, makes the observation that reversals for abuse are rare.

■ The rule in Wyoming has been established in several cases. Whether or not the qualification of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, whose determination is usually final and will not be disturbed except in extreme cases. Krahn v. Pierce, Wyo.1971, 485 P. 2d 1021, 1025; Taylor v. MacDonald, Wyo.1966, 409 P.2d 762, 764; Johnson v. Hanover Fire Ins. Co., 1943, 59 Wyo. 120, 133, 137 P.2d 615, 618.

The rule applied to speed determination cases has been treated extensively in Anno., 29 A.L.R.3d 248, 252, where an overall coverage is outlined for the United States in general. It is there simply stated:

"Since the law gives the trial court considerable discretion in determining whether a witness qualifies as an expert, it is difficult to state precisely when a witness such as a police officer, highway patrolman, or other law enforcement officer will be considered qualified to give expert opinion testimony based on skid marks and other physical facts, on the question of the speed of a motor vehicle. Although there are a few decisions to the contrary, most appellate courts have held that the trial court does not abuse its discretion in permitting a law enforcement officer to give such opinion testimony where the witness testifies that he has had special training and substantial experience in the investigation of motor vehicle accidents, including their causes and the determination of speed based on physical evidence."

■ It is realized that some expert testimony in various cases is stronger than in others and that its effect is damaged to an extent by effective cross-examination, such as in this particular case. It is, however the function of the jury to sort out the weaknesses and the strengths of the testimony. If a trial judge takes on too actively the role of disagreeing with the opinions of an expert and manner of arriving at them, he runs the danger of placing himself in the position of being the expert and usurping the office of the jury.

■ Plaintiff's allegation of error really goes to the weight to be given the testimony of the highway patrolman. Admissibility and credibility are two separate subjects. The weight is left to the jury. Graham v. Rolandson, 1967, 150 Mont. 270, 285, 435 P.2d 263, 271; Thomas v. Harper, 1964, 53 Tenn.App. 549, 385 S.W.2d 130, 136; Central Container Corp. v. Westbrook, 1962, 105 Ga.App. 855, 126 S.E.2d 264, 268. A jury has considerable latitude in its acceptance or rejection of expert testimony.

The following instruction would be appropriate, once admissibility is established and illustrates the part of the jury in such situations, excellently states the rule and is given as an example, though there are others of a similar nature in general use.

"The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call 'expert witnesses'. Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state an opinion as to the relevant and material matter, in which they profess to be expert, and may also state their reasons for the opinion.

"You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely." 1 Devitt and Blackmar, Fed. Jury Instr., 2d Ed., § 11.27, p. 241–242.

■ Though it would have been preferable, such an instruction was not given in this case, nor was a similar one offered, but the preliminary instruction generally in use, outlining the duties of the court and jury, pertaining to all witnesses, did minimally suffice and was given in the following language:

"The jury is the sole judge of the credibility of the witnesses, and of the weight to be given their testimony. In so doing, you may take into consideration all facts and circumstances in the case, and give to each such weight as in the light of your experience and knowledge of human affairs you think it is entitled to.

"In judging the credibility of the witnesses in this case, you should take into consideration * * * their apparent intelligence or lack of intelligence, their means of knowledge of the facts testified to, * * *"

The highway patrolman's testimony was not as incredible as plaintiff would have us believe. He made some trial or test skids the next day on the same highway surface over which plaintiff's skids traversed, and he testified that the road was in the same condition as at the time of the collision. There is some conflicting testimony, which it was the job of the jury to resolve. Plaintiff thought the highway was slightly damp; the highway patrolman indicated that his report said it was dry. Even if a little damp, he could see no material outcome in his test results. Plaintiff inquired about the different type of tires on his vehicles as compared to those on the test car, the different types of cars used, the temperature, etc. He freely admitted not taking various possibilities into consideration but stuck to his position that they were not of any material significance.

■ With some modesty, the highway patrolman, on cross-examination, in answer to the question, "You don't qualify yourself as an expert?", replied, "No." Regardless of how the witness classified himself, he did do a pretty good job and was expert; in the light of his experience and knowledge and ability to use the skid calculator tools given to him by the highway department, which had an accepted basis in accident investigation. Apparently, the jury was not impressed that he was as uninformed as the cross-examiner attempted to make him out. It would be the observation of this court that his tests were conducted in a competent enough manner that they should be considered by the jury.

While there were some differences in the testimony of plaintiff's expert when compared to that of the highway patrolman, their respective approaches have considerable similarity. But it was for the jury to decide the invalidity of the patrolman's conclusion that plaintiff was traveling 78 miles per hour, which did not take into consideration the remaining forward force which badly smashed up plaintiff's automobile and left him and his passengers severely injured. We can find no abuse of discretion in admitting the testimony of the highway patrolman.

■ Plaintiff objected to the following instruction given by the court:

"The laws of Wyoming regulating traffic on highways in effect at the time and place of the accident in question provides: 'Sec. 31–82, PUBLIC OFFICERS AND EMPLOYEES TO OBEY PROVISIONS; Exceptions * * * * (b) Unless specifically made applicable, the provisions of this act shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon a highway but shall apply to such persons in vehicles which are travelling to and from such work.' "

The jury found in favor of the plaintiff's two passengers, which reveals to the court that it found against the operator of the snowplow and as its agent, the Wyoming State Highway Department. There is no need to discuss this claim of error because as to plaintiff's passengers the jury found against defendants—a finding of negligence; so, the plaintiff was not anywise prejudiced. Webber v. Farmer, Wyo.1966, 410 P.2d 807, 811. The court emphasizes that it is neither approving nor disapproving this instruction for use in any other case, but merely states that it is no basis for error under the circumstances here.

■■ Plaintiff raises error in that the trial judge instructed the jury as follows:

"The court instructs the jury that a motorist must operate his vehicle at such a rate of speed and with such control as to be able to stop in time to avoid an obstruction discernible within the motorist's length of vision ahead, or within the assured clear distance ahead, when such vision is interfered with by fog, mist, cloudy weather, or similar atmospheric conditions."

Plaintiff claims that this instruction is too strict and not the rule prevailing in Wyoming and cities in support, Gamet v. Beazley, et al., 1045, 62 Wyo. 1, 14, 159 P.2d 916, 920. Gamet did not reject this as a rule but specifically said, "It is not, we think, necessary to determine whether we should adopt the rule * * * mentioned."

This is hardly more than the standard set by § 31–130, W.S.1957, C.1967, 1973 Cum.Supp., when it recites: "(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." This statute was included in one of the court's instructions. The instruction asserted to be erroneous does no more than specify an example of such a hazard, which common sense requires us to accept. In a blowing snow case, this court has already approved the rule that "where the vision of the driver of an automobile is obscured, whether by the lights of an approaching car, fog, smoke or for any other reason, it is his duty to stop until visibility is restored, or to reduce his speed and have his car under such control that he can stop immediately if necessary." Price v. State Highway Commission, 1946, 62 Wyo. 385, 399, 167 P.2d 309, 313. For a blinding sun case, see Templar v. Tongate, 1953, 71 Wyo. 148, 255 P.2d 223.

While we approve the assured clear-distance rule given by the trial judge, we would improve its form when made into an instruction, by explaining that it is negligence not to abide by the rule and is a jury question to decide whether the rule was violated. It would then, in an appropriate case for its application, appear as follows:

"The court instructs the jury that a motorist must operate his vehicle at such a rate of speed and with such control as to be able to stop in time to avoid an obstruction discernible within the motorist's length of vision ahead, or within the assured clear distance ahead, when such vision is interfered with by fog, mist, cloudy weather, or similar atmospheric conditions. *It is negligence not to do so. It is for you to decide whether or not such facts exist in this case, so as to require application of this rule of law.*"

It is considered harmless to leave out those added, emphasized words because we must give the jury some credit for an under-

standing of what the court was driving at. On this point, we are only talking about making it nicer and more precise, not substance, when considering the instruction as a whole.

■ In reviewing the proceedings taking place after the jury had retired, at which objections to the instructions were made, it is noted that plaintiff's objection to the instruction is so inadequate that it is no objection at all. Rule 51, W.R.C.P., states that the objection must state distinctly the matter to which a party objects and the grounds of his objection. It is an insufficient objection to an instruction to merely state that the same is not a complete or accurate statement of the law, as was done. The proper procedure is to outline the reasons why the instruction is not a complete or accurate statement of the law and to submit to the court the proper language of an instruction which clearly states completely and correctly the law. We recognize that there may be times when the objection is that no instruction on a point of law should be given, in which case it is, of course, not necessary to offer one but the objection must distinctly set out the matter objected to, along with meaningful, explanatory objections. We would have ignored the objection as done in most cases and not discussed the rule, but because of a recurring question about the clear-distance rule, it should be finally settled so that in the future disposition can be made without discussion.

■ The trial court did follow a procedure we find objectionable, is contrary to Rule 51, W.R.C.P. and destroys some of the very reasons for the requirement that:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

In this particular case, over the protest of the attorney for plaintiff, the court apparently insisted that the objections be made after argument. From the record, this court gathers that the objections were made immediately after arguments and after the jury had retired, but before the jury had returned. The process of making objections to instructions is a time when the court is afforded an opportunity to reflect upon the proposed charge to the jury in the light of objections made and many times serves the desirable purpose of enabling the court to correct itself or modify an instruction to meet some well-taken objection. Objections to instructions serve a useful purpose, other than making a record for appeal.

While it did not constitute error in this case, the practice was disapproved in Jackson v. Gelco Leasing Co., Wyo.1971, 488 P.2d 1052. There may be the situation noted in Jackson when the objections have already been made but not entered in the record until later though that is not apparent here.

If plaintiff had a proper objection to make, and it was recognized, the embarrassment and confusion of calling the jury back from deliberations to correct an erroneous instruction could be avoided. There are other inherent dangers, such as that appearing in Jackson, supra, where one of the parties did not make his objections until three days later, after the jury had returned a verdict; too late!

■ Plaintiff complains that there should have been separate verdict forms as to each of the defendants, rather than the joint one used by the court. There is no evidence in the case that by any conceivable notion the jury might have found the plaintiff's contributory negligence a bar to one defendant but not to the other or that the servant's negligence was any different from that of the master. There is no need to itemize the situations in which separate verdicts would be proper. None exist here.

There was no prejudicial error.

Affirmed.