The STATE of Wyoming, Plaintiff,

v.

Robin ZESPY, Defendant.

No. 85–165.

Supreme Court of Wyoming.

Aug. 15, 1986.

A.G. McClintock, Atty. Gen., Sylvia Hackl, Sr. Asst. Atty. Gen., Tim Goddard, argued, Legal Intern, and J. Scott Evans, Dist. Atty., Seventh Judicial Dist., for plaintiff.

Frank R. Chapman, Casper, for defendant.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

### FACTS

We are presented with a very scanty transcript of the proceedings. Many of our background facts are drawn from the parties' briefs or from statements made by the lawyers during motion hearings. These facts are included to set the stage for our opinion but cannot form a basis for resolution of the sufficiency-of-the-evidence question. "We can only decide a case upon what appears in the record before us." *Matter of Estate of Reed*, Wyo., 566 P.2d 587, 590 (1977). Matters alluded to by attorneys at motion hearings or in briefs are not testimony and cannot be considered. *Kirby Building Systems, Inc. v. Independence Partnership No. One*, Wyo., 634 P.2d 342, 345 n. 2 (1981).

Mr. Zespy was charged with manufacturing and possessing psilocybin with intent to deliver in violation of § 35–7–1031(a)(ii), W.S.1977. He pled not guilty, not guilty by reason of mental illness or deficiency, and not competent to stand trial. He was examined by Dr. Burnett at the Wyoming

State Hospital in Evanston, by Dr. Elkin, a private psychiatrist practicing in Casper, and by Dr. Miracle, a psychologist. They found that he was not mentally responsible for his actions under § 7–11–305(b), W.S. 1977. The State determined, nevertheless, that it should proceed; and his jury trial began on January 14, 1985.

Although § 7–11–305(b) had been amended to place the burden of proving insanity upon the defendant, the parties agreed that the older version of the statute applied. Under that version, once the defense produced some evidence of insanity, the burden shifted to the State to prove beyond a reasonable doubt that Mr. Zespy was sane at the time of the offense. Prior to its 1983 amendment, § 7–11–305(b) provided:

> "The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant."[1]

There is no doubt that the defense produced enough evidence of insanity to shift the burden to the prosecution. Drs. Miracle, Elkin and Burnett all testified that Mr. Zespy was not mentally responsible for his actions when he committed the alleged crimes. In rebuttal the State called Dr. Lee Coleman, a psychiatrist from Berkeley, California, who had never personally examined Mr. Zespy. After inquiring into Dr. Coleman's training, practical experience and writings, the prosecutor asked him to describe the kind of expert testimony he usually gave in criminal cases. Dr. Coleman responded:

> "Because of my view about the limits on methods of the state of the art of psychiatry, I do not testify about the state of

---

1. The statute, as amended, provides:

    "The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged. Every defendant is presumed to be mentally responsible. The defendant shall have the burden of going forward and proving by the greater weight of evidence that, as

    a result of mental illness or deficiency, he lacked capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." Section 7–11–305(b), W.S.1977, Cum.Supp. 1985.

mind of the defendant at the time of the crime or whether a person will be dangerous or try to give a diagnosis.

\*　　\*　　\*　　\*　　\*　　\*

"So my testimony goes to whether or not the methods employed by the psychiatrists, who have already testified in the case, deserve any credibility. My opinion is that the state of psychiatry does not deserve to be given that credibility. We just don't have the tools[;] therefore the answer to your question that whoever is bringing in psychiatry to try to prove their case, it will be the other side who might be interested in having me come in to testify about whether or not the methods are really reliable.

\*　　\*　　\*　　\*　　\*　　\*

"I am saying that the methods of psychiatry, the methods by which we decide upon diagnosis, the method by which we decide upon legal issues such as whether a person knew what they were doing was wrong or had capacity to conform. The methods psychiatry applies do, in my opinion, not come up to the standard of the expertise that the law thinks they do."

Defense counsel objected to Dr. Coleman's anticipated testimony on grounds that it would amount to an attack on the legislature's determination that expert psychiatric witnesses are competent to render an opinion in insanity cases. The district judge asked Dr. Coleman if it was his position that there are no proper psychiatric methods which could be used to reach the conclusions set forth in the Wyoming statutes. Dr. Coleman said that it was proper for psychiatrists to testify under the law, but he did not believe that their opinions were entitled to any credibility. The judge then told the prosecutor that he did not understand how Dr. Coleman's testimony would be admissible, and the prosecutor responded by explaining that the doctor would talk about the merits of the specific procedures followed by the other psychiatrists. The following discussion between the judge and prosecutor occurred:

"THE COURT: As I understand it, your witness is not going to say that the particular methods used by the experts for the Defense in this case were necessarily deficient, that something better could be done, but no matter what would have been done, it would not be sufficient.

"MR. EVANS: I think that that is correct, except that his testimony is going to focus on what they did, if he has an opinion that there is a better way perhaps he could suggest it, but he is going to focus on what they did and express his concern and the concerns of a lot of American Psychiatric Association about methodology.

\*　　\*　　\*　　\*　　\*　　\*

"THE COURT: I think you are presenting the position to the wrong forum that belongs probably in the Legislature, the Legislature has given us a law we must work with, obviously the Legislature thought there were methods that could be used to reach conclusions, otherwise to say the law for the Legislature is not good, that is not for us to say here."

Dr. Coleman then tried to explain his prospective testimony to the judge:

"THE WITNESS: Well, what I intend to testify to once these qualifications were finished with, my expectation was to examine the methods and means used by experts who have testified for the Defense and give my opinion on the methods that were used.

"THE COURT: But you, as I understand it, have stated that there are no methods that could be used to present a satisfactory answer to the question in our statute.

"THE WITNESS: Well, they are satisfactory, they are legally permissible, what I would expect to testify is as to their credibility, how scientific, how psychiatrists arrive at diagnosis, are there inconsistencies in the record, are the statements of the doctors in their reports inconsistent with actual records of hospitalization, and many, many other such

issues, which I found in my study of the records.

\* \* \* \* \* \*

"THE COURT: Well, I think, do I understand correctly, Doctor, what your position amounts to is you are saying there is not at this time any scientifically valid method, that can be applied to answer the questions posed by our statute? Is that right?

"THE WITNESS: Yes, that is true, methods don't exist.

\* \* \* \* \* \*

"THE COURT: The problem with that approach, it seems to me, it is basically a statement that our law is no good, invalid, the Legislature is mistaken in this procedure. I do not think that is admissible."

The district judge refused to admit Dr. Coleman's testimony, because it would indicate that there are no valid methods in psychiatry which can be used to answer the questions posed by the insanity statute. According to the judge, this would contradict the legislature's intent because the legislature was "obviously of the opinion there are some valid methods that can be used to answer the questions proposed."

Without Dr. Coleman's rebuttal testimony, the State was left with only lay witnesses to contradict the psychiatric testimony introduced by the defense. Relying on *Reilly v. State*, Wyo., 496 P.2d 899 (1972), the district judge held that lay testimony is insufficient, by itself, to prove sanity beyond a reasonable doubt when it is contradicted by the opinion of examining psychiatrists. Therefore, the trial court concluded that Mr. Zespy was entitled to a directed verdict of acquittal by reason of insanity.

## REBUTTING EXPERT
## PSYCHIATRIC TESTIMONY

The constriction placed upon *Reilly v. State*, Wyo., 496 P.2d 899 (1972), was not correct. In *Reilly*, we held that a court may direct a verdict in favor of a criminal defendant if the prosecution does not provide any substantial credible evidence that

he was sane. Id. at 902–903. We pointed out that, if the defendant's evidence of insanity is strong, the State may not be able to provide substantial credible evidence simply by producing lay witnesses. But we never said that lay witnesses were always insufficient or that the prosecution must always produce a psychiatrist to contradict the defendant's psychiatrists.

The proper rule is more clearly stated in *Gerard v. State*, Wyo., 511 P.2d 99, 104 (1973), a case which neither of the parties cited to the district judge:

"We noted in *Reilly*, supra, that neither the trial court nor this body should substitute its opinion for that of the jury, whose finding of fact should not be interfered with if there is any substantial evidence to support it. As the court said in *People v. Krugman*, 377 Mich. 559, 141 N.W.2d 33, 35 [ (1966) ], 'The jury is the ultimate judge of defendant's sanity at the time of the crime, and \* \* \* since it had before it evidence of defendant's behavior and state of mind upon the basis of which it could have found defendant sane at that time, it was not bound by the expert opinion testimony of the doctor. \* \* \*' We again recognized this view in *Jarrett v. State*, Wyo., 500 P.2d 1027, 1031–1032 [ (1972) ], involving a murder charge, where we held that the trial court correctly denied a motion for acquittal notwithstanding the testimony of psychiatrists that defendant had suffered from a mental disease or disorder, our position being that the other evidence which had been adduced was sufficient to show that defendant knew and understood the nature and probable consequences of his act, knew that it was morally wrong or forbidden by law, and had sufficient will power to control his acts. As Mr. Chief Justice McIntyre said in *Rice v. State*, Wyo., 500 P.2d 675, 676 [ (1972) ], 'A jury can always disregard the testimony of an expert if the jurors find it to be unreasonable.' "

There may be cases where neither lay testimony nor expert testimony by a non-examining psychiatrist is sufficient to re-

but the testimony of examining psychiatrists. If reasonable minds could not differ on the defendant's insanity, then that issue should not be submitted to the jury, and a directed verdict of acquittal should be entered. But, a court should not grant an acquittal *solely* because the prosecution fails to produce an examining psychiatrist to rebut the testimony of the defendant's psychiatrists. Under some circumstances, rebuttal by a lay witness or a non-examining psychiatrist may be sufficient to make the defendant's sanity a question for the jury.

## ADMISSIBILITY OF DR. COLEMAN'S REBUTTAL TESTIMONY

■ The State contends that the district court should have admitted Dr. Coleman's rebuttal testimony under § 7–11–305(d), W.S.1977, which states:

"In addition [to the designated examiners who examined the defendant for competency], the state and the defendant may summon other expert witnesses who did not examine the defendant. Such experts are not competent to testify as to the mental responsibility of the defendant; however, *they may testify as to the validity of the procedures followed and the general scientific propositions stated by other witnesses.*" (Emphasis added.)

According to the State, this statute expressly permitted Dr. Coleman to attack the various tests employed by the defense psychiatrists. We agree.

When it was held that Dr. Coleman's proffered testimony would undermine statutory procedures, the distinction between the competency of a witness and the competency of a witness' opinion was improperly blurred. In § 7–11–305(c), the legislature stated that examining psychiatrists are competent to testify about the sanity of the defendant.[2] A rebuttal witness cannot argue that examining psychiatrists are incompetent witnesses who should not be permitted to testify. That matter is settled by the statute.

But, § 7–11–305(c) does not say that the *opinions* expressed by psychiatric witnesses are automatically competent, i.e., credible. Through § 7–11–305(d), the legislature has expressly permitted a non-examining psychiatrist to question the validity of the procedures and general scientific propositions presented by the examining psychiatrists. The legislature did not list the psychiatric procedures or propositions that it endorses. Nor did it limit the number of procedures or propositions that can be offered or attacked. If the examining psychiatrists offer every proposition or procedure for testing sanity that is known to man, a rebuttal psychiatrist can attack every one of them. And if the rebuttal psychiatrist can attack every test individually, there is no logical reason why he cannot attack them as a group by stating that there are no valid tests that have been developed by the psychiatric profession.

If the legislature thought that there are at least some valid psychiatric tests of sanity, it could have endorsed those tests in the statute. But the legislature did not do so. Apparently, the legislature could not decide which psychiatric tests, *if any*, are valid, so it left that decision to the juries on a case-by-case basis. The legislative intent is not violated when a rebuttal witness tells the jury that there are no psychiatric tests which can be used to ascertain sanity. Instead, such testimony helps the jury perform its delegated task, the evaluation of the psychiatric tests.

Under our interpretation of § 7–11–305(d), the jury is free to disregard the rebuttal testimony of a witness like Dr. Coleman and conclude that some or all of the tests performed by the examining psychiatrists are credible. On the other hand, the jury should also be free to conclude that there are no psychiatric tests that can help it ascertain the defendant's sanity at the time of the offense. The jury would

---

**2.** Section 7–11–305(c), W.S.1977, states:
"The designated examiners who examined the defendant pursuant to W.S. 7–242.3 [§ 7–11– 303] or 7–242.4 [§ 7–11–304] are competent witnesses."

then have to decide the sanity issue based on evidence other than psychiatric test results. For example, it might have to apply its collective understanding of human behavior to the defendant's criminal acts, his demeanor in the courtroom or his other out-of-court conduct.

The jury's reliance on evidence other than psychiatric opinion is consistent with our opinion in *Gerard v. State*, supra, 511 P.2d at 104. There we said that a jury can disregard psychiatric testimony and rely on other evidence which shows that the defendant knew his actions were morally wrong and that he had sufficient will power to control his acts.[3] We quoted with approval the following statement:

> " 'The jury is the ultimate judge of defendant's sanity at the time of the crime, and * * * since it had before it evidence of defendant's behavior and state of mind upon the basis of which it could have found defendant sane at that time, it was not bound by the expert opinion testimony of the doctor.' " Id., quoting *People v. Krugman*, 377 Mich. 559, 141 N.W.2d 33, 35 (1966).

Of course, the jury would have been free to ignore Dr. Coleman's views and rely upon the opinions of the defendant's psychiatrists. In either case, the jury would have ultimately applied the legislature's definition of insanity. Dr. Coleman's critique of all psychiatric testing would not have interfered with the jury's ability to determine Mr. Zespy's sanity under the legislature's definition of that term.

In conclusion, the district court should have allowed Dr. Coleman to testify about the tests conducted by the examining experts. He should also have been permitted to testify that there are no psychiatric tests upon which a psychiatrist can base a valid opinion about a defendant's sanity. This kind of testimony is permitted by § 7–11–305(d), W.S.1977. It would not have nullified the legislature's decision that exam-

ining psychiatrists are competent witnesses, and it would not have prevented the jury from applying the legislature's definition of insanity.

## SUFFICIENCY OF THE EVIDENCE

The State argues, in a perfunctory manner, that there would have been sufficient evidence of sanity to prevent a directed verdict if the court had permitted Dr. Coleman to testify. This is not the kind of legal issue which merits attention in a bill of exceptions. Our analysis of the sufficiency of the evidence under the facts of this case will have no impact on either of these parties or future litigants. Moreover, the record does not contain any psychiatric or lay testimony other than the statements of Dr. Coleman. With this record, we would not be able to comment on the sufficiency of the evidence even if it merited our attention. See *Matter of Estate of Manning*, Wyo., 646 P.2d 175, 176 (1982).

URBIGKIT, Justice, concurring in part and dissenting in part.

I concur with the court in determining that the rebuttal testimony of lay witnesses is admissible and may have been sufficient to raise a jury issue, and further that no sufficiency-of-the-evidence issue was suitably presented.

I differ with the majority in regard to the claimed error of the trial judge in rejecting the proffered testimony of the nonexamining psychiatric expert which was tendered to rebut the efficacy of the examining experts' testimony on the mental illness and deficiency plea.

Although I have serious concern for court control and supervision of expert witnesses as a class of paid professionals, this discussion will be confined to the peculiar status of experts in Wyoming, within the purview of the plea made pursuant to Rule

---

**3.** Under § 7–11–304(a), W.S.1977:

"A person is not responsible for criminal conduct if at the time of the conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

15, W.R.Cr.P. and § 7–11–301 et seq., W.S. 1977, and particularly § 7–11–305(d).

In support of the trial court's decision to exclude the testimony of the nonexamining psychiatric witness, I will address the difference between rebuttal attack on the validity of procedures utilized by examining experts, described in their testimony, and a general attack on an entire field of academic inquiry.

It is not logical to contend, as did the witness (Coleman), and now the State of Wyoming in this bill of exceptions, that if the witness challenges the validity of specific processes he can also logically deny the validity of all processes without first demonstrating knowledge and expertise about every possible process or combination of processes that may or may not have been utilized by the examining expert witness on the subject of constitutionality and statutorily required absence of mental illness or deficiency.

Found in the syllogistic conclusion is one of the classic fallacies of logic.[1]

The authorities evaluating logic as a reasoning process have also defined this negative argumentative approach as "scientific crank" logic—the attack of an entire area of expertise as a method to contradict the knowledge and testimony of the individual expert witness. See Salmon, *Logic*, p. 68 (1963).

Whatever Coleman may consider to be his limits to accomplish determinative evaluations within the field of psychiatry, the Wyoming legislature has determined that the knowledge and techniques of psychiatrists will be used to evaluate the mental illness or deficiency of a criminal defendant, and the United States Supreme Court requires the utilization of psychiatry to afford constitutional rights. Section 7–11–303, W.S.1977; *State v. Pressler*, 16 Wyo.

214, 92 P. 806 (1907); *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); *Blake v. Kemp*, 1 F.R.S.3d 1263, 758 F.2d 523 (11th Cir.), reh. denied 763 F.2d 419, cert. denied — U.S. —, 106 S.Ct. 374, 88 L.Ed.2d 367, 3 F.R.S.3d 494 (1985).

It is nonsensical to attack an area of expertise when the constitutions, both state and federal, require that an inquiry into that discipline may be necessary to provide individual rights within the criminal justice system.

The broad question presented by the bill of exceptions is whether the trial court has the authority, *Lessard v. State*, Wyo., 719 P.2d 227 (1986), and *Rocky Mountain Trucking Co. v. Taylor*, 79 Wyo. 461, 335 P.2d 448 (1959), to deny admission of the testimony of an expert witness when the expert denies the efficacy of previously introduced professional evaluation as an attack on psychiatry in general. I have no doubt that if Coleman had taken each of the methods of evaluation utilized by each of the witnesses for the defense, and first testified as to his professional knowledge and experience with that test or process and finally described its separate invalidity, then the issue presented would have been his credibility and not his competency.

The difference to be recognized is that competency is the threshold requirement—possession of the legal fitness and qualifications to testify, Black's Law Dictionary, p. 257 (5th ed. 1979), while credibility is the subjective evaluation of the testimony of a competent witness by the fact-finder, Black's Law Dictionary, supra at 330. The court determines competency and the fact-

---

1. The syllogism may be variously illustrated:
   Either:
   I am an expert about some evaluative processes.
   Those processes are invalid.
   All evaluative processes are invalid.
   Or:

   Some evaluative processes are invalid.
   Other experts may use those processes.
   The conclusions of those experts are invalid.
   This appears to be the fallacy of an undistributed middle term and illicit process of a major or minor term. Chase, Guides to Straight Thinking, p. 205 (1956).

finder assesses credibility. This dissent is postured on that difference.

It would be foolish not to recognize that some inhabitants of the earth still believe that the earth is flat, and that likewise others conceptualize that psychiatry is only slightly preferable to witch-doctoring.

However, the trial court has just so much time to exercise its discretion in trying to provide social justice. Consequently, authority to make reasoned decisions in the broad field of mental illness or deficiency should not be denied. Psychiatry is all that there is, and its use is constitutionally invoked and statutorily defined.[2]

I would find the decision overbroad in applying the criteria of credibility to the statutory limitation of competency wherein the witness "may [only] testify as to the validity of the procedures followed and the general scientific propositions stated by other witnesses." Section 7–11–305(d). This statutory language does not afford creation of a "field of competency" to testify that psychiatry is invalid, but only that the particular diagnostic efforts were invalid in concept or application. See Coleman, *Psychiatry and Personal Injury: Exposing the Experts*, For the Defense, p. 8 (February 8, 1985); Blinder, *Psychiatric Analysis in Personal Injury Cases*, Trial, p. 75 (May, 1986). The cross-examination techniques outlined in the latter publication are appropriate for impeaching credibility, but the intrinsic question which this court should here consider is competency, and competency should be determined by the trial judge. See *Lessard v. State*, supra. The witness should be able to make himself *incompetent* as well as *incredible*.

We said in *Smith v. State*, Wyo., 564 P.2d 1194, 1199 (1977):

"* * * The admission or rejection of expert testimony on a wide range of subjects is a decision solely within the sound discretion of the trial court; and that court's decision will only be reversed upon a showing of clear and prejudicial abuse. [Citations.]"

In my view, the thrust of Coleman's testimony—its competency—falls directly within the court's sound discretion since his testimony did not evaluate the procedures followed and the general scientific proposition stated by the prior psychiatric witnesses and, of significance, did not see the individual involved in order to make some personal assessment for diagnostic purposes. See *Lessard v. State*, supra.

Equally valid assistance to the jury could likely have been afforded by one or two witch doctors, one or two medicine men, and both the town barber and the female hair stylist. Cf. *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), and *Estelle v. Smith*, 451 U.S. 454, 473, 101 S.Ct. 1866, 1878, 68 L.Ed.2d 359 (1981). I do not find compliance with provisions of the Wyoming Constitution, specifically Art. 1, § 6, the due-process clause, from such unreliable testimony. See Note, *Evidence—Expert Testimony—Admissibility of Expert Testimony: Wyoming Takes A Moderate Approach*, XIX Land & Water L.Rev. 708 (1984). See also *McCabe v. R.A. Manning Construction Co., Inc.*, Wyo., 674 P.2d 699 (1983); *Buhrle v. State*, Wyo., 627 P.2d 1374 (1981); and *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923).

"There are good reasons why not every ostensibly scientific technique should be recognized as the basis for expert testimony. Because of its apparent objectivi-

2. "* * * The cunning of modern bureaucracy is that it creates a hierarchy in which no one feels personally responsible for anything important that goes wrong. Everywhere I look I see the public mental health system being shaped by this cunning, and legal reform seems to me to have hastened that process. By setting barriers in the path of treatment responsibilities, and by imposing on psychiatrists responsibilities they could not fulfill, legal reform has turned a ratchet that will not easily be turned back. As we pass through the 1980s the great ideological dragon of psychiatry has been coaxed out of its cave. The major legal battles have been fought, and when the dust settled the dragon was gone and all that remained was a collection of hapless civil servants. Yet madness has not gone out of the world as was hoped, in fact madness is more visible than ever before in this century." Stone, *Law, Psychiatry, and Morality* p. 156 (1984).

ty, an opinion that claims a scientific basis is apt to carry undue weight with the trier of fact. In addition, it is difficult to rebut such an opinion except by other experts or by cross-examination based on a thorough acquaintance with the underlying principles. In order to prevent deception or mistake and to allow the possibility of effective response, there must be a demonstrable, objective procedure for reaching the opinion and qualified persons who can either duplicate the result or criticize the means by which it was reached, drawing their own conclusions from the underlying facts." *United States v. Baller*, 519 F.2d 463, 466 (4th Cir.), cert. denied 423 U.S. 1019, 96 S.Ct. 456, 46 L.Ed.2d 391 (1975).

"Like the insanity defense, the practice whereby the courts call in experts to advise them on matters not generally known to the average person goes back a long time: in English courts, over four centuries. Initially, the experts were used as technical assistants to the court, rather than as witnesses. The judge summoned experts to inform him about technical matters; he then determined whether the information should be passed on to the jury. By the middle of the seventeenth century, when the finding of the facts had become the exclusive province of the jury, the practice of court-appointed experts reporting to the judge was abandoned; instead, the experts were called as witnesses by the parties involved in the dispute." Simon, *The defense of insanity*, 11 Journal of Psychiatry and Law 183, 193 (1983).

The article from which the quotation above is taken affords a brief and interesting history of the insanity defense, including the early stated criteria in 1723 of the "wild beast test." See also Levine, *The adversary process and social science in the courts: Barefoot v. Estelle*, 12 Journal of Psychiatry and Law, 147, 149–150 (1984):

"Expert testimony is admitted at trial because an expert may be able to contribute something beyond what the lay jury or fact finder can determine from the facts. The expert may not only testify to facts, but based upon special knowledge, skill, or experience, the expert may assist the trier of fact to draw inferences from facts. To warrant use of an expert, the 'subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman.' [Cleary, McCormick's Handbook of the Law of Evidence (2d ed. 1972).]"

The article properly comports with my concern and distills the basis upon which the sound discretion of the trial court to evaluate the proffered testimony should still be afforded.

"In *Barefoot v. Estelle*, the Supreme Court admitted psychiatric testimony of dangerousness in the death penalty phase of a trial for a capital offense, despite substantial empirical evidence such predictions were more often wrong than right, and despite opposition from the American Psychiatric Association stating that such predictions were scientifically unacceptable and possibly unethical. The Court's opinion relied on adversary process to protect against the unreliability of expert testimony." 12 Journal of Psychiatry and Law, supra, synopsis at 147.

See also *Chavez v. State*, Wyo., 604 P.2d 1341, 1349 (1979), cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). This court should

" * * * [recognize] the well established rule that the district court's determination of whether an expert's qualifications are established will not be disturbed except in extreme cases or when a clear abuse of discretion is shown,' referring to *Lee v. State*, Wyo., 556 P.2d 217 (1976), and Rule 702, W.R.E. Also see *Runnion v. Kitts*, Wyo., 531 P.2d 1307 (1975)."

I would affirm the trial court's decision to exclude the proposed Coleman testimony as rebuttal evidence in the insanity inquiry.