Mark ENGLE, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 88–123.

Supreme Court of Wyoming.

May 31, 1989.

Leonard D. Munker, State Public Defender and Steven E. Weerts, Sr. Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Patrick M. Anderson, Legal Intern, for appellee.

Before CARDINE, C.J., and
THOMAS, URBIGKIT, MACY and
GOLDEN, JJ.

URBIGKIT, Justice.

Mark E. Engle (appellant), an unemployed twenty-four year old transient, was sentenced for felony auto theft, and his appeal now presents procedural and documentary sufficiency for judicial determination of either his competency to stand trial or to be convicted.

## I. FACTS

On September 11, 1987, Nick Stovall parked at a store in Casper to purchase an ice cream cone. On return to the parking lot, his 1979 GMC Suburban was gone. A witness in the vicinity saw the vehicle being driven around a corner at a fast speed and skid into an adjacent tree. The driver got out, appeared to be drunk, looked at witnesses at the scene and vehicle damage, got back in the vehicle and drove away. An hour or so later, at a point about thirty miles east of town toward Douglas, a highway patrolman stopped the vehicle because of a REDDI report (Report Every Drunk Driver Immediately) and his observation of swerving and general erratic driving. The arresting officer drew his weapon and called for backup. Circumstances of the resulting arrest indicated strangeness of behavior, if not intoxication.

Appellant, as the driver, was arrested upon confirmation of vehicle theft and charged with felony auto theft and not the joyriding misdemeanor. When thereafter arraigned in district court, appellant, as an indigent, was provided appointed counsel and first pleaded not guilty. Thereafter, on November 2, 1987, a stipulated order

approved and entered by the district court provided:

COMES NOW the Defendant, by and through his court appointed attorney, Jack Vreeland, and hereby moves the Court to enter his pleas of not guilty by reason of mental illness and not triable by reason of mental illness or deficiency, and upon the stipulation by the State of Wyoming by and through Patrick Crank, Assistant District Attorney, and the Court being duly apprised in the premises FINDS that it would be in the best interest of justice that the Defendant be transported to the Wyoming State [H]ospital at Evanston for an evaluation to determine whether or not the Defendant is fit to proceed and to determine whether or not the Defendant had a mental illness or deficiency at the time of the commission of the offense.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Defendant shall be transported by the Natrona County Sheriff's Department to the State Hospital at Evanston for an evaluation pursuant to Wyoming Stat[ut]e 7–11–303 and 7–11–304.

IT IS FURTHER ORDERED that the Defendant shall remain at the Wyoming State Hospital on an in-patient basis for a period no longer than thirty days (30) for the study of the mental condition of the accused.

IT IS FURTHER ORDERED that written reports of the pre-trial examination shall be filed with the Clerk of Court and including those matters as set forth with Wyoming Statute 7–11–303 and 7–11–304.

## II. INSANITY DEFENSE PROCEDURE

Responsive to the district court order, a letter dated November 24, 1987, as filed November 30, 1987, was furnished and signed in behalf of Frank L. Rundle, M.D. and approved by the state hospital superintendent, which stated in full text:

Mr. Engle was admitted to the Wyoming State Hospital on 12 Nov 87 in accordance with your order for evaluation.

He was interviewed by the undersigned on 13 Nov 87 at which time he declared that he had had no prior knowledge of his coming to the hospital for evaluation, that he had not been informed of this by his attorney, that he objected to being here and would not undergo evaluation. His attorney, Mr. Vreeland, was contacted, and he stated that indeed he had discussed the evaluation with his client and that he did, in fact, know that he was being sent to the hospital. He further explained that one of the difficulties he has had in working with the client is that he presents different stories at different times about the same set of circumstances and it has been impossible to know which was accurate.

I met with Mr. Engle again on 16 Nov 87 at which time he again stated that he had no knowledge of coming to the hospital for evaluation and declared again that he would not participate in the procedure. It was therefore decided that he would be returned to jail.

In the two brief interviews which were held with Mr. Engle at this hospital, he did provide some limited information. He stated that he had been in the Arizona State Hospital in Phoenix at some time in the past, that having been also for a court ordered evaluation, and he was found to be competent. He had also been treated in a private psychiatric hospital in Phoenix as a result of an accidental overdose of Methamphetamine, a drug which he had used regularly over a period of several years.

In these two interviews, Mr. Engle manifested no obvious signs of mental illness or deficiency. There was no associational thought disorder, no disturbance of mood or affect, and no evidence for hallucinations or delusions or other major psychopathology. He was well oriented, there was no impairment of attention or concentration, memory was intact, and intellectual level was estimated to be high average.

## III. INTENT AS AN ISSUE OF THE OFFENSE

It is the statutory sufficiency of this correspondence which was not even signed by the author from which we are called to consider effectiveness to deny and nullify a

pleaded defense of non-responsibility and mental illness or deficiency. The state of appellant's intent and his degree of intoxication were peculiarly significant because, dependent upon the character of intent in regard to displacement of rights of ownership, the undenied offense was either a felony auto theft or misdemeanor joyriding.

The felony auto theft, as provided by W.S. 6–3–402(a), states:

A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

The maximum punishment is ten years imprisonment and a $10,000 fine or both if the property value is $500 or more. The joyriding statute, W.S. 31–11–102, provides:

Any person who without specific authority of the owner or his authorized and accredited agent willfully, wantonly, or maliciously takes possession of, or drives, propels or takes away, or attempts to take possession of, drive, propel, or take away a vehicle, the property of another, for the purpose of temporarily making use of the vehicle, or who

knowingly aids, abets or assists another in so doing, upon conviction, is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both.

██ Consequently, in defense theory as now presented and since the obvious unauthorized taking did occur, the appellate issue becomes whether permanent intent to deprive was refuted either by intoxication or lack of mental competency. Facts singularly applied to these potential defenses were the characterization of the arresting officer to his supervisor that, upon arrest, it looked like he had a "fruitcake" as well as the corollary circumstance that appellant had checked into a transient facility in Casper where his belongings were found and was driving down the road toward Douglas having abandoned both his belongings and his arranged residence for the day.[1]

## IV. COMPETENCY HEARING

Following the filing of the letter from the Wyoming State Hospital, procedurally,

---

1. In this one-and-a-half-day trial encompassing about ninety transcript pages for prosecution and ten pages for defense, the only uncertain factual inquiry was why appellant did what he did. The discernable and undisputable facts were appellant left a bar, saw an unattended vehicle and took off while leaving his belongings where he had checked in at the Souls Anchor Rescue Mission (since called Central Wyoming Rescue Mission), a transient facility. Perhaps as explainable as any other reason was the appellant's version stated to the probation officer for presentence investigation after conviction, since appellant had not, for whatever reason, elected to testify at trial:

"I went to My Brothers Place that day after I allready [sic] drank a bottle of peach schnapps and bought a couple of beers (4)[.] I had been shooting coke for awhile and did some more in the bathroom there. The bartender I felt did not like me and I think he put something in my beer and when I was one quarter of the way through the last beer I started spinning so I got up[,] went to the bathroom [and] then left cause [sic] I thought something strange was going on. I could hardly see. I went to Nick[']s truck and it had the keys so I got in to be able to get out of there, and I got into a wreck with a tree, I left the accident, and I just got onto the closest freeway and drove until I got busted in Douglas."

Comparable to this completely irrational course of events, including appellant's action in leaving his belongings at the transient facility, was the characterization by the arresting officer to his superior that:

Q. And in fact in discussing it with your captain you referred to pulling over this "fruitcake" is, I believe how you termed it?

A. Well, no, sir.

Q. Officer Becker, is that the way you termed it or not?

A. Oh, yes, sir, I called, I told Captain Morrison that this could be a "fruitcake."

Q. And that was based on information you had garnered from REDDI reports and your observations?

A. Yes, sir.

And as part of the arrest process:

Q. Okay, he was laying on the ground and complaining about it being dirt and you are telling him it is just pavement not dirt.

A. Right.

Q. So apparently his observations were somewhat inaccurate at that time?

A. Either that or he was just trying to give me a hard time.

Q. I guess ultimately you decided he had had a little bit too much to drink?

A. Yes, I did.

a "competency hearing" was convened on January 7, 1988 to consider the stipulated pleas of "not guilty by reason of mental illness and not triable by reason of mental illness or deficiency." The choices presented by counsel for appellant were:

[A]sking Mr. Engle to be sent down to the Hospital to try for an evaluation on him. I anticipate in the alternative asking the Court for a continuance for us to get a psychiatrist for us to look at him, and as a third option we would ask the Court to withdraw because I don't think we can be effective, if there is not in fact the cooperation that the evidence will show the Court between Mr. Engle and myself.

The State responded to the alternative choices requested by standing on the sufficiency of the state hospital letter and by objection to a further psychiatric examination:

MR. CRANK: Your Honor, the State doesn't intend on calling any witnesses in this matter, and we would stand on the report that we have received from the State Hospital as to Mr. Engle's competency to proceed at the stated proceedings.

THE COURT: Are you opposed to the notion of the Defense obtaining their own psychiatrist to examine him?

MR. CRANK: I am, Your Honor, for a couple of reasons. Mr. Engle has been incarcerated since the time of his arrest for this offense. I think we will be running into speedy trial problems if we get another evaluation. Secondly, you know, we did receive a report back on November 30th, of 1987, from the State Hospital, where—the Court has a copy of this, where Mr. Engle refused to cooperate with the authorities at the State Hospital in performing an evaluation. Once we received that report, then there was certainty pursuant to that statute and the rules, the Defendant certainly had the opportunity at that point in time to request a second evaluation. We haven't done that. And, I believe, the time has run for that type of relief. Mr. Engle had every opportunity when he went to

the State Hospital the first time to cooperate and have a report, and he just didn't do so. I think the evidence today will show Your Honor Mr. Engle has been through the system on a number of occasions, and he is aware of how to work the system, and the State would respectfully submit to the Court that is all he is doing, and to allow him a continuance of this trial, at the late date, at this late date, would just further serve what he is attempting to do is just to mess with the system until such time as we do have a trial and getting Mr. Engle out of all of our hair.

THE COURT: Well, the statute places a time limit upon the request for the subsequent examination.

MR. CRANK: I believe so, Your Honor.

MR. VREELAND: I believe there is a five day afterwards, Judge, but part of our contention is that what we have received from the Hospital in the first place really isn't in accordance with the statute. Any way I don't see how a person could really consider this a report in accordance with the Statute 7–11–303, which sets out what the Hospital should do for us. It is our position we really haven't gotten an evaluation from the Hospital and don't see how we can call this letter from there November 24th an evaluation, it doesn't address the statutory criteria. I think in that it does try to address some issues, and I think explained to everyone what went on, but other than that I don't think we can call this an evaluation, with what we requested or ordered the hospital to do.

MR. CRANK: Your Honor, I can't find that time limit statute right now, but I know there is a relatively short period of time to request a second evaluation.

THE COURT: 7–11–304(d).

MR. CRANK: It does state within five days after receiving a copy of the report. I recognize what Mr. Vreeland is saying, but, you know, the State Hospital did the best they could do because of Mr. Engle's uncooperativeness. If he had gone down there and cooperated with them, then we would have a report that com-

plies with 7–11–303. They wrote us a report with as much information as they had, based on Mr. Engle's complete refusal to cooperate with them, and they did what they had to do, and then sent him back to jail here in Natrona County to await trial.

The state hospital superintendent who had signed the letter in behalf of the examiner and then signed his approval but had no personal contact with appellant in any fashion during the period of supposed examination was called as the first witness for the hearing. The actual institution author of the letter was gone from the hospital and was apparently not available to testify. Consequently, the testifying witness could provide no personal knowledge of the mental condition of appellant and except for the letter, did submit no other documentary evidence to be considered. *Cf. State v. Zespy*, 723 P.2d 564 (Wyo. 1986).

A private investigator was then called by the defense who testified about his contacts and attempted interviews with appellant. In essence, he stated:

A. I have talked to Mr. Engle probably six or seven times in [the] prior two or three months, and he has never been consistent or ever told me the same story twice. Also have different twists, different facts, some of them, I don't know how you put it, every time I approach him as far [as] why, that is just the way it happened, he doesn't understand why I don't believe his story.

Q. He never refused to talk to you or anything like that?

A. No, never has.

Q. Did you ever obtain any medical reports on Mr. Engle?

A. Yes, I had talked to Mr. Engle about a doctor he had seen before he ever came to Wyoming, and he gave me the names of two or three different doctors that he had seen at Phoenix, Arizona, at three different hospitals. I then contacted the hospitals after I had obtained a medical release form, sent to them also, and they sent me back his complete files at three different hospitals.

Q. In general were these treatments for psychological matters or for physical disabilities?

A. Most of them psychological.

At hearing conclusion, following the cross-examination of the investigator about the lack of cooperation and inconsistency of the mental character of appellant, the district court denied any second evaluation, denied the withdrawal of appellant's counsel, and denied a continuance for the trial then scheduled to convene four days later. The principal basis for the district court's decision was that the five-day re-examination period had passed without required request by appellant's counsel for the second evaluation. By this decision, the district court determined both issues of triability and prospective defense on the merits which are separate "discrete" questions because each is governed by different medical and legal standards. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States v. Taylor*, 437 F.2d 371 (4th Cir.1971). Thus, assistance for defense was denied to appellant. *United States v. Crews*, 781 F.2d 826 (10th Cir. 1986).

This time limitation was derived from W.S. 7–11–304(d), which provides:

In all cases where a plea of "not guilty by reason of mental illness or deficiency" is made, the judge shall order the defendant examined as provided in W.S. 7–11–303(b). If an examination provided in W.S. 7–11–303(b) was made, the report may be received in evidence and no new examination shall be required unless, in the discretion of the court, another examination is necessary. Within five (5) days after receiving a copy of the report, both the accused and the state, upon written request, may obtain an order granting them an examination of the accused by a designated examiner of their own choosing. The clerk of court shall deliver copies of the report or reports to the district attorney and to the accused or his counsel. All reports required by this subsection shall conform to the requirements of

W.S. 7–11–303(c). These reports are not public records or open to the public.

The record really does not establish when the report was received by the public defender and probably never was furnished to appellant. There seems to be an assumption from the record that the public defender became aware of the letter, and the context now presented is that the letter was not considered to be an adequate evaluation since the text of the letter failed to comply with the statute. It was on the basis of the statutory non-compliance analysis that the public defender's office had perhaps belatedly, in the alternative, requested either a re-examination to constitute the first real evaluation at the state hospital or that another examiner be designated.

## V. PROBLEM WITH JURY INSTRUCTIONS

The defense trial problems were not then to end. Requested jury instructions which were denied by the district court included:

A finding that Defendant was mentally responsible for his acts is not equivalent to a finding that he acted with the specific intent necessary for the crime charged. Even if you find from the evidence in the case beyond a reasonable doubt that the accused was mentally responsible for his acts at the time of the alleged offense, it is still your duty to consider all the evidence in the case which may aid in determining whether he acted with the necessary specific intent.

Mental illness or deficiency can be brought about by the continuous use of intoxicating liquor or drugs. A defendant is not barred from using the defense of lack of me[n]tal responsibility beca[us]e his mental illness or deficiency was brought about by continued use of any such substance.

Under certain circumstances a person is not legally responsible for his criminal conduct. Among those circumstances, Defendant is not legally responsible for criminal conduct if:

(1) He was suffering at the time of the criminal conduct from a mental illness or deficiency; and

(2) As a result, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

The term "mental deficiency" means a defect attributable to mental retardation, brain damage and a learning disability.

The phrase "mental illness or deficiency" does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

The State must prove that the Defendant was mentally responsible for the crime beyond a reasonable doubt.

Thus, if you do not believe that the State has proven beyond a reasonable doubt that the Defendant was mentally responsible, then you should find him not guilty by reaso[n] of mental illness or deficiency.

The lesser included instruction was given, but the principal justification—mental condition for the felony offense—had been denied. Actually, there is nothing in this record, even if we expand its scope to the investigator's comments and analysis, that even intimates that appellant had a particular intent to deprive Stovall, as the owner of the vehicle, of permanent possession of his vehicle. As observed from this insufficient record, all one derives is a conclusion that appellant lacked defined rationality in taking the vehicle and what he did thereafter during his aimless driving. The issue of sufficiency of the evidence is not presented on appeal and need not, consequently, be further pursued.

## VI. WHAT HAPPENED TO INSANITY DEFENSE

The prime subject of appellant's concern in this appeal is what happened, not only to his defense of not triable by reason of mental illness, but also to the substantive plea of not guilty by reason of mental illness or deficiency after pleading presentation by stipulation and district court order. It can only be explained that defense counsel waived both of these aspects by

virtue of his delay in requesting a second examination, which might provide some realistic mental condition information. Lacking that examination, there was no available viable evidence to litigate the mental sufficiency condition of appellant. Similarly, this case was the same as another case where, *"[a]s a result, there was no expert testimony for either side on Ake's sanity at the time of the offense." Ake v. Oklahoma,* 470 U.S. 68, 72, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Notwithstanding that, "[a]n insanity defense after all, unlike a medical malpractice claim, does not require expert testimony as a prerequisite for presentation to a jury." *Motes v. State,* 256 Ga. 831, 353 S.E.2d 348, 349 (1987). In this case, the defense simply disappeared by the district court's decision in initial hearing that the letter was sufficient to determine competency and that other examinations were waived by delayed request. See also *Zespy,* 723 P.2d 564.

This procedure cannot meet the standard required by *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), since no adequate hearing on competency was provided *either* pretrial or during trial which was responsive to the mental deficiency plea. Similar authority is found in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), which also requires conviction reversal. In result, the district court denied consideration to appellant of his mental condition when the state hospital failed to comply with statutory requirements for a mental examination report. Thereafter, by interpretation that the letter did not fulfill the requirements for a proper report, appellant's counsel, by untimely request, lost his right to have any real mental evaluation to secure compliance with W.S. 7–11–304(d).

It is well settled that the conviction of an accused while he is legally incompetent to stand trial violates due process. *Massey v. Moore,* 348 U.S. 105, 108, 75 S.Ct. 145, 147, 99 L.Ed. 135, 138 (1954); * * *. A state must provide procedures that are adequate to protect a defendant's due process right not to be tried while he is incompetent. *Pate v. Robin-*

*son,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815, 818 (1966); * * *.

*Manning v. State,* 766 S.W.2d 551, 553–54 (Tex.App.1989).

What occurred to appellant in this case calls into direct question the text of the examination statute, W.S. 7–11–303, which provides:

(a) If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.

(b) The court shall order an examination of the accused by a designated examiner. The order may include, but is not limited to, an examination of the accused at the Wyoming state hospital on an inpatient or outpatient basis, at a local mental health center on an inpatient or outpatient basis, or at his place of detention. In selecting the examination site, the court may consider proximity to the court, availability of an examiner, and the necessity for security precautions. If the order provides for commitment of the accused to a designated facility, the commitment shall continue no longer than a thirty (30) day period for the study of the mental condition of the accused.

(c) Written reports of the pretrial examination shall be filed with the clerk of court. The report shall include:

(i) Detailed findings;

(ii) An opinion as to whether the accused has a mental illness or deficiency, and its probable duration;

(iii) An opinion as to whether the accused, as a result of mental illness or deficiency, lacks capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed;

(iv) An opinion as to whether at the time of the alleged criminal conduct the accused, as a result of mental ill-

ness or deficiency, lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law;

(v) A recommendation as to whether the accused should be held in a designated facility for treatment pending determination by the court of the issue of mental fitness to proceed; and

(vi) A recommendation as to whether the accused, if found by the court to be mentally fit to proceed, should be detained in a designated facility pending further proceedings.

(d) The clerk of court shall deliver copies of the report to the district attorney and to the accused or his counsel. The report is not a public record or open to the public. After receiving a copy of the report, both the accused and the state may, upon written request and for good cause shown, obtain an order granting them an examination of the accused by a designated examiner of their own choosing. For each examination ordered, a report conforming to the requirements of subsection (c) of this section shall be furnished to the court and the opposing party.

\*   \*   \*   \*   \*   \*

(f) If neither the state, nor the accused or his counsel contests the opinion referred to in subsection [paragraph] (c)(iii) of this section relative to fitness to proceed, the court may make a determination and finding of record on this issue on the basis of the report filed or the court may hold a hearing on its own motion. If the opinion relative to fitness to proceed is contested the court shall hold a hearing on the issue. The report or reports may be received in evidence at any hearing on the issue. The party contesting any opinion relative to fitness to proceed has the right to summon and cross-examine the persons who rendered the opinion and to offer evidence upon the issue.

\*   \*   \*   \*   \*   \*

(h) A finding by the court that the accused is mentally fit to proceed shall not prejudice the accused in a defense to the crime charged on the ground that at the time of the act he was afflicted with a mental illness or deficiency excluding responsibility. Nor shall the finding be introduced in evidence on that issue or otherwise brought to the notice of the jury. No statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any person in the course of the examination or treatment shall be admitted in evidence in any criminal proceeding then or thereafter pending on any issue other than that of the mental condition of the accused.

(j) Notwithstanding any provision of this section, counsel for the accused may make any and all legal objections which are susceptible of a fair determination prior to trial without the personal participation of the accused.

This means that the required written report will contain six specific items constituting detailed findings by the qualified expert from his evaluation of appellant's mental state.

Without examination, appellant had no testimony to submit about his mental competency. *Denied consideration of the plea of not guilty by reason of mental illness or deficiency, the verdict form given by the district court permitted jury decision only of not guilty; guilty of a lesser charge, unauthorized use of a motor vehicle; or guilty of the felony. The pleaded defense of not guilty by reason of mental illness of deficiency was never submitted to the jury, although it had been made by joint stipulation of counsel and authenticating order of the district court.* Found guilty of the felony, appellant was then sentenced to not less than six years nor more than eight years with credit for the 200 days served in the county jail while awaiting trial. Appellant has now been in continuous confinement since offense date of September 11, 1987 or nearly twenty months.

This case is even more egregious than *Ake,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, since here the substantive defense of the accused was not submitted to the jury

for any consideration. The three cases cited by the State, *Ball v. State,* 278 Ark. 423, 646 S.W.2d 693 (1983); *Mikel v. State,* 550 S.W.2d 863 (Mo.App.1977); and *State v. Bacon,* 501 S.W.2d 499 (Mo.App.1973), can easily be distinguished by differences in facts and controlling state statutes. We find the case of *Miller v. State,* 498 S.W.2d 79 (Mo.App.1973) to be more relevant and more persuasive. See also *Drope,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103.

The Illinois appellate court, when considering similar facts and including expert witness denial, discerned:

> In failing to appoint a psychiatrist to determine defendant's mental condition at the time the offense occurred, the trial court denied defendant his constitutionally guaranteed right to due process. (*Ake,* 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66.) This was clearly an abuse of the trial court's discretion.

*People v. Kegley,* 175 Ill.App.3d 335, 125 Ill.Dec. 42, 529 N.E.2d 1118, 1123 (1988).

## VII. SUFFICIENCY OF THE REPORT

The issue spotlighted in specificity for this appeal is whether the state hospital letter substantially complied with the statutory requirements. Also focused was what happens if the state hospital letter does or does not comply when appellant was denied any additional examination so he had no substantive evidence for his mental condition defense. The present requirement for mental examination statutorily provided and constitutionally required in Wyoming was enunciated long ago.

> "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. Thus, Blackstone wrote that one who became 'mad' after the commission of an offense should not be arraigned for it 'because he is not able to plead to it with that advice and caution that he ought.' Similarly, if he became 'mad' after pleading, he should not be tried, 'for how can he make his defence?' 4 W. Blackstone, Commentaries* 24."

*State v. Pedersen,* 309 N.W.2d 490, 501 (Iowa 1981) (quoting *Drope,* 420 U.S. at 171, 95 S.Ct. at 903).

Clearly, the state hospital letter did not contain the information required by W.S. 7–11–303(c). *Hayes v. State,* 599 P.2d 558, 562 n. 3 (Wyo.1979). Within the text, it gave no explanation as to why he did not understand his examination, included no comment as required by W.S. 7–11–303(c)(iv) as to his condition at the time of the alleged criminal conduct, referenced no conclusion in regard to cooperation with his counsel, and failed to suggest what other examination or observation might provide some realistic evidence. No indication is given that other medical records were considered or prior history reviewed for opinion support. See Drob and Berger, *The Determination of Malingering: A Comprehensive Clinical–Forensic Approach,* 15 J. Psychiatry and the Law 519 (1987). The federal court considered that being mean and manipulative does not necessarily equate to legal sanity, *United States v. Samuels,* 801 F.2d 1052 (1986), *reh'g denied* 808 F.2d 1298 (8th Cir.1987). We do not have confirming evidence of either characteristic here. It is established that "in some cases a 'failure to cooperate may itself be a symptom of mental disorder.'" *Taylor,* 437 F.2d at 378 (quoting Judicial Conference of the District of Columbia Circuit, Report of the Committee on Problems Connected with Mental Examinations of the Accused in Criminal Cases Before Trial 34 (1966)).

## VIII. RIGHT TO SECOND OPINION

This court is faced with the second problem of waiver by the office of the public defender of a claimed right to secure a second opinion because, in their analysis, as not completely unreasonable, the first report failed totally to comply with the statutory responsibility of the state hospital. Suffice it to say that within an *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821, *reh'g denied* 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985) con-

cept, counsel cannot waive such a fundamental right under the United States Constitution or Wyo. Const. art. 1, § 6, due process of. law; and art. 1, § 10, right of accused to defend.[2]

## IX. CONCLUSION

Factually, the plea of not guilty by reason of mental deficiency was extinguished because (1) the state hospital did not conduct a reasonable evaluation, and (2) the response was not vigorously attacked by appellant's counsel within five days after receipt. Disregarding other complex appellate issues conjecturally presented, we would simply conclude that (1) the report of the state hospital did not comply as a medical illness or deficiency report pursuant to W.S. 7–11–303 and, consequently, did not provide a basis in response to the order for examination by which further examination could be denied; and (2) pleas of not guilty by reason of present mental illness or deficiency and not guilty by reason of mental illness were not eviscerated or waived by the state hospital letter.

We reverse and remand for an appropriate evaluation by one or more designated examiners who will prepare a written report in compliance with the mandatory criteria of W.S. 7–11–303(c) to provide a basis upon which a realistic incompetency hearing can be conducted and for jury consideration of appellant's defenses.[3]

GOLDEN, J., specially concurs.

CARDINE, C.J., and THOMAS, J., dissents.

GOLDEN, Justice, specially concurring.

I concur in the reversal of the conviction on the simple ground that the state hospital's mental examination and subsequent letter report did not comply with the statutory requirements. Appellant raised only that issue on appeal. We should decide the case on that single issue and restrain ourselves from unnecessarily expanding the opinion. Without such restraint, we serve up dicta on points of law or trial strategies or other matters "merely as a majority of the court may at that particular time consider them of future importance. To me, this amounts to the issuance of advisory opinions, a procedure that we ordinarily reject." *Stuebgen v. State*, 548 P.2d 870, 886–87 (Wyo.1976) (McClintock J., specially concurring). See also *State v. Rosachi*, 549 P.2d 318, 322 (Wyo.1976).

CARDINE, Chief Justice, dissenting.

I cannot join in the opinion of the court and therefore dissent. The opinion is too broad, goes much too far, and decides questions without supporting authority which are not presented in this appeal. For example, under "Right to Second Opinion," the court discusses waiver by the public defender's office of a "claimed right" to a second opinion. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), is cited for the proposition that counsel cannot waive "such a fundamental right." Assuming that the right referred to is the right to a second opinion by a designated examiner defined by W.S. 7–11–304(d), this court has never decided this to be a "fundamental" right in the constitutional sense. The only case cited, *Evitts*, is an ineffective

---

**2.** The prosecution in final argument stated:

Ladies and Gentlemen I want to talk to you for a moment about inconsistent defenses. The Defense told you the defendant had plead not guilty and not guilty by reason of mental illness. Mental illness has gone by the wayside. Now Mr. Vreeland stands up and tells you that he didn't intend to deprive Mr. Stovall of his car, but if that doesn't work, he was too drunk to form the necessary intent.

There are inconsistent defenses, Ladies and Gentlemen, and they are all dodges, all smokescreens put up by Mr. Vreeland to hide the defendant's complicity in the charged crime of grand larceny. All of the so-called defenses are inconsi[s]tent with any of the facts or any of the evidence that you have heard, that we listened to all day yesterday.

**3.** See for example an interesting law journal article on the intent—mental condition subject. Comment, *Criminal Law—Mental Illness—Insanity Defense Reform Act Does Not Bar Defendant From Offering Psychiatric Evidence of Mental Abnormality on Issue of Mens Rea. United States v. Pohlot, 827 F.2d 889 (3d Cir.1987)*, 20 Rutgers L.J. 271 (1988).

assistance of counsel case. Three separate questions of constitutional law are apparently being decided with nothing more than scant discussion.

Additionally, the opinion describes appellant's behavior in stealing the truck as a "completely irrational course of events." The opinion heavily stresses the fact that the appellant abandoned his belongings at the rescue mission, apparently because this could be evidence of intent to return. Since this case is going back on remand, I question whether the court should characterize the behavior as *"completely* irrational." I, for one, think it would be rational to conclude that the benefit to be obtained from a 1979 Suburban might be greater than the intrinsic value of the transient's possessions left at the Souls Anchor Rescue Mission.

In conclusion, my major concern with the court's opinion is that appellant raises just one issue. That issue is dispositive of the case. I cannot accept this opinion which discusses six other issues not raised, especially when the discussion is painted in such broad strokes.

THOMAS, Justice, dissenting.

I cannot join the majority opinion in this case, and I dissent from the disposition there made. Mental incompetents are favored in the law. We long have recognized the impact of mental illness or deficiency with respect to criminal responsibility or the capacity of an accused to assist in addressing the issues involved in a trial to determine culpability for criminal conduct. Section 7–11–302, W.S.1977, capsulizes the social position:

"(a) No person shall be tried, sentenced or punished for the commission of an offense while, as a result of mental illness or deficiency, he lacks the capacity, to:

"(i) Comprehend his position;

"(ii) Understand the nature and object of the proceedings against him;

"(iii) Conduct his defense in a rational manner; and

"(iv) Cooperate with his counsel to the end that any available defense may be interposed."

Section 7–11–305(a), W.S.1977, then provides for the submission of a verdict form to a jury "by which the jury may find the defendant not guilty by reason of mental illness or deficiency excluding responsibility." Wyoming statutory procedures with respect to the issues of responsibility or inability to stand trial because of mental illness or deficiency are designed to comport with what historically has been perceived as a valid humanitarian approach.

Analyzed in this way, however, these procedures are a means to an end and not simply an end in itself. In pursuing the means to an end, perhaps it is necessary to instruct the staff at the Wyoming State Hospital with respect to how the report should be written. The majority opinion, however, quotes the report which, in this instance, essentially is negative. Considering that the examination perhaps was limited because Engle refused to cooperate in connection with it, still, the physician stated in his report:

"In these two interviews, Mr. Engle manifested no obvious signs of mental illness or deficiency. There was no associational thought disorder, no disturbance of mood or affect, and no evidence for hallucinations or delusions or other major psychopathology. He was well oriented, there was no impairment of attention or concentration, memory was intact, and intellectual level was estimated to be high average."

Given these findings by the examiner, it is difficult for me to conclude that they are not detailed. Because the findings are negative, I am unable to perceive what else the examiner might do to furnish an opinion as to whether Engle has a mental illness or deficiency or whether, as a result of any mental illness or deficiency, he lacked capacity to comprehend his position or to understand the nature and object of the proceedings against him or to conduct his defense in a rational manner or to cooperate with his counsel to the end that any available defense might be interposed. It is clear to me that the findings do consti-

tute an opinion that Engle did not suffer from mental illness or deficiency or lack substantial capacity to appreciate the wrongfulness of his conduct at the time of the theft of the vehicle. Under the circumstances, recommendations as to where he should be held pending trial, or a determination of his fitness to proceed, seem unnecessary.

While the examiner may not have dotted his i's or crossed his t's, given his overall conclusion with respect to Engle, I have to ask whether it is really necessary to require a report that follows the outline of the statute. Is it possible that the court simply is saying that if one claims to be afflicted with a mental illness or deficiency, no report saying he is not satisfies the requirements of the statute?

The court has chosen to pursue additional issues as a matter of dictum, which apparently is uttered in its role as an advocate rather than its role as an arbiter. In addressing those additional issues, the majority opinion overlooks the provision of § 7–11–305(b), W.S.1977, which provides, in pertinent part:

> " * * * Every defendant is presumed to be mentally responsible. The defendant shall have the burden of going forward and proving by the greater weight of evidence that, as a result of mental illness or deficiency, he lacked capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

I note that the majority alludes to testimony by Engle's investigator that he had obtained medical reports from three different hospitals relating to psychological matters. Curiously, no effort was made to introduce those reports at any stage of these proceedings. If they were favorable to Engle on the question of competency, then he was a victim of inadequate representation. However, the other possibility is that these reports also were negative, which would make it very understandable why counsel did not want to develop them further at either the proceedings on competency or at the trial. In fact, that does seem to be the most logical way to understand this record.

This brings us back to the threshold language in § 7–11–303(a), W.S.1977, which states as follows:

> "If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is *reasonable cause to believe* that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended." (emphasis added).

I recognize that the common practice is to pursue the statutory examination procedure whenever the issue is raised. In this instance, however, once Engle had been to the state hospital and that report had been received, the reasonable cause to believe that Engle was afflicted with mental illness or deficiency no longer was present in the absence of additional information. The trial judge saw through this effort by Engle, which well might be described as specious. My interpretation of the record is that Engle set out to cozen his defense counsel, his investigator, the prosecutor, the trial court, and the examiner at the Wyoming State Hospital. That technique did not work for him there, but it worked in this court. I must confess a suspicion on my part that Engle will chuckle all the way back to the state hospital, or wherever he chooses not to go, for his next incompetency examination. I shall await further developments with interest.

I would, however, affirm Engle's conviction.