Mark E. ENGLE, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 90–146.

Supreme Court of Wyoming.

Nov. 26, 1991.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Defender Aid Program, Donna A. Murray, Student Intern, and Robert A. Willis (argued), Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Karen A. Byrne, Senior Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Cynthia L. Harnett (argued), Student Intern, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Mark Engle was convicted of grand larceny of a motor vehicle. The conviction resulted from a retrial following the reversal and remand of his first conviction. He challenges his second conviction on issues concerning a competency hearing and the trial court's treatment of two motions in limine.

We affirm.

Engle frames the issues as follows:

"I. Whether the district [court] erred by allowing documentary evidence into the competency hearing without affording the defendant the opportunity to confront and cross-examine the author of the document.

"II. A. Whether the district court committed reversible error when it allowed the prosecution to violate defendant's motion in limine.

"B. Whether the district court's inconsistent enforcement of the prosecution's motion in limine constituted reversible error."

On September 11, 1987, Nick Stovall parked his vehicle in the parking lot of a Casper ice cream store. He left the keys in the vehicle and left the vehicle unlocked. Near the ice cream store is a bar. He saw Engle exit from the bar. When Stovall left the store about ten minutes later, his vehicle was gone.

Thomas Crawford was at his grandparents' house, which was about a half block from the ice cream store. He observed Stovall's vehicle round a corner at high speed. The vehicle struck a tree in the grandparents' front yard. Engle opened the door, leaned out, looked at the damage and drove away. Engle was driving the vehicle.

A Wyoming highway patrol officer stopped Engle driving the vehicle on Interstate 25 south of Douglas. The highway patrol had received a report about Engle driving this vehicle through its REDDI— Report Every Drunk Driver Immediately— program. Engle was subsequently placed under arrest.

In November 1987, Engle entered pleas of not guilty by reason of mental illness and not triable by reason of mental illness or deficiency. A mental evaluation at the state hospital was ordered. On January 12, 1988, a jury found Engle guilty of grand larceny of a motor vehicle, and Engle received a sentence of six to eight years in prison.

We reversed that conviction because the state hospital's evaluation was insufficient for the trial court to make a proper determination as to Engle's mental condition. *Engle v. State*, 774 P.2d 1303 (Wyo.1989). We remanded the case to the district court to afford Engle a proper evaluation and a new trial. *Id.* at 1312.

After remand, a second mental evaluation was performed at the state hospital. Dr. Breck Lebegue submitted his report on October 12, 1989. In his report, Dr. Lebegue concluded that Engle was not mentally ill at the time the crime was committed and that he was competent to stand trial. Dr. Lebegue also advised the court that he would be out of the country from December 11, 1989, until March 11, 1990.

Engle moved for a second evaluation, which was ordered by the court. Dr. Bernice Elkin conducted the second evaluation and issued her report on December 27, 1989. She concluded that Engle was not competent to stand trial.

The court set a competency hearing for January 19, 1990. The State moved for a continuance because Dr. Lebegue would be out of the country and unavailable. Engle filed a pro se motion to dismiss in which he objected to any continuances. The hearing was held as scheduled. Neither Engle nor his attorney objected to the absence of Dr. Lebegue. The court found Engle competent to stand trial after reading Dr. Lebegue's and Dr. Elkin's reports and hearing the testimony of Dr. Elkin.

At trial, Engle relied upon a mental illness defense. Engle did not dispute that he took the vehicle. The jury found him guilty. The court again imposed a sentence of six to eight years in the penitentiary with credit for time served.

■ In his first issue, Engle asks us to find reversible error because he was unable to confront and cross-examine Dr. Lebegue at his competency hearing. We note that the State moved for a continuance of the competency hearing because Dr. Lebegue was unavailable on the date the hearing was set. Engle objected to the continuance. As a result, the hearing was held as scheduled. Because Engle's action resulted in the claimed error, we examine the issue under the doctrine of invited error.

■ Under the doctrine of invited error, if a party induces action by a court, the party cannot argue error because the court took such action. *Thatcher & Sons Inc. v. Norwest Bank Casper*, 750 P.2d 1324, 1328 (Wyo.1988). Invited errors will not normally be grounds for reversal unless they go beyond a pertinent reply or are necessarily prejudicial. *Sanville v. State*, 593 P.2d 1340, 1345 (Wyo.1979).

■ The granting or denial of a continuance is within the discretion of the court. *Urich v. Fox*, 687 P.2d 893, 894 (Wyo.1984). Since no showing of an abuse of discretion is made, the court's denial of the motion for a continuance does not go beyond a pertinent reply to Engle's objection to a continuance.

■ We find no prejudice as a result of the court's denial of the motion for a continuance. The party seeking to show competence to stand trial has the burden to

show it by a preponderance of evidence. *Loomer v. State,* 768 P.2d 1042, 1045 (Wyo. 1989). Thus, the State had the burden of proof at the competency hearing. A continuance would have allowed the State to consider presenting additional evidence through Dr. Lebegue. Instead the State relied solely upon Dr. Lebegue's written evaluation. Engle presented Dr. Elkin's report and her testimony. It appears that Engle was advantaged, rather than prejudiced, by having the State's motion for a continuance denied. Thus, we find no cause to reverse because Engle, as a result of his own action, could not confront and cross-examine a potential witness.

 Engle's second issue concerns the court's treatment of motions in limine filed by himself and the State. A hearing on these motions was scheduled before trial. The record, however, contains no transcript of the hearing. The case at the district court level concluded before the effective date of the amendment to W.R.A.P. 4.01, which now requires:

> "Transcripts in criminal cases shall consist of all proceedings held in open court including but not limited to voir dire, opening statements and final arguments, conferences with the presiding judge in open court and in the court chambers, in addition to the testimony of the case and other required materials."

The requirement became effective July 10, 1990. The hearing was scheduled for March 30, 1990, and Engle was sentenced on May 3, 1990. Thus, the rule is not applicable to this case. Furthermore, any alleged error for failure to include a transcript of the hearing in the record on appeal would be harmless because it is clear from the record that the motions were granted. Engle, therefore, was not prejudiced from the failure to have the hearing transcript included in the record. *Cf. Bearpaw v. State,* 803 P.2d 70 (Wyo.1990).

 Engle's motion stated in part:

"Defendant, Mark Engle, hereby moves the Court for an order in limine regarding the following matters:

"1. Any mention of Mark Engle's prior conviction for the alleged 1987 grand lar-

ceny (which conviction was reversed by the Wyoming Supreme Court) should be deleted from all medical reports, records and testimony.

"2. No testimony regarding Mark Engle's conviction for the alleged 1987 grand larceny (which conviction was later reversed) should be allowed.

"3. No evidence or testimony regarding Mark Engle's prior convictions, juvenile record, charges, criminal behavior, or arrests including, but not limited to, the nature of the charges/convictions/behaviors or arrests should be allowed.

"4. No mention of evidence or testimony regarding Mark Engle having 'stolen' the vehicle should be allowed.

"5. Evidence, mention of, testimony regarding Mark Engle's stays at criminal institutions should be allowed."

Engle argues that paragraph five of the motion was intended to mean that evidence of his stays at criminal institutions should have been excluded. He cites no authority nor presents any cogent argument for this proposition. Thus, we need not address this contention. *Bland v. State,* 803 P.2d 856, 862 (Wyo.1990). However, even assuming arguendo that paragraph five means what Engle says it means, no violation of the court's order granting his motion in limine occurred.

Engle points to four places in the record where he contends the order was violated. The first place is during the State's opening statement, where the following occurred:

"[The State]: That will be the true evidence with regard to the intoxication, but you have a second decision you will have to make in this case that is—

"[Engle's Counsel]: Just for the record. I am aware of the prior ruling, I need to make my objection in terms of the motion in limine. At this point we will ask the State not to proceed and continue his argument.

"THE COURT: I will overrule the objection.

"[The State]: And the question you have to answer, because of any mental illness the defendant may have been suffering

from, should he be held responsible for his actions on September 11th, 1987?" The question of Engle's mental condition was an issue in this case and not covered under the motion in limine. No mention of excluded areas was made in the State's opening after the objection was overruled.

 The remaining three places Engle claims the in limine order was violated occurred after the State had rested its case in chief and when Engle presented his case concerning his mental illness plea. *See* W.S. 7–11–305. All three references to which Engle draws our attention refer to stays in criminal institutions. Before this phase of the trial began, the State informed the court that reference might be made during examination of witnesses to Engle's stays in criminal institutions. The State said such references could result due to the type of patient history mental health professionals use in making evaluations. The court agreed with the State, acknowledged that such references might be made, but admonished the attorneys to avoid having witnesses mention these stays "as best that they can." The court again repeated this charge before the State put on its rebuttal. Engle's counsel acquiesced in this solution of the problem. At one point during this phase of the trial she stated:

"Again we are going to be mentioning penal institutions, and I would ask that they be kept to a minimum with regards to any examination of Dr. Lebegue."

 Engle, having agreed to the best efforts attempt to avoid references to Engle's stays in criminal institutions, should not now be heard to complain. We might again apply the doctrine of invited error, but that is unnecessary, for the court has the power to modify or rescind orders relating to motions in limine by virtue of its inherent power and duty to assure a fair and impartial trial. *Hayes v. State*, 599 P.2d 558, 565 (Wyo.1979). Absent a clear abuse of discretion, we will not disturb the court's decision modifying such motions as they relate to the admission of evidence. *Id.* at 566. Engle has the burden of showing an abuse of discretion. *Id.* Engle has not met this burden, and we find no abuse of discretion in the court's modification of its order.

 The State's motion asked:

"1. That the Court issue an order limiting the Defendant from introducing or eliciting any opinion testimony as to the Defendant's state of mind at the time the Defendant stole the victim's automobile[.]"

Engle points out that he was not allowed to ask his expert a question concerning his ability to form specific intent. He claims that the trial court allowed the State to do so. However, he can point to no place in the record where this occurs. The best Engle can do is point to his motion to dismiss where an offer is made to have Engle's investigator testify that she heard the State violate such an order. We find nothing in record showing a violation. We do not consider matters upon which the record is silent. *Mentock v. Mentock*, 638 P.2d 156, 160 (Wyo.1981).

Affirmed.

URBIGKIT, Chief Justice, dissenting.

My analysis has not changed since the opinion was written in *Engle v. State*, 774 P.2d 1303 (Wyo.1989) (*Engle I*) that this hapless individual committed the offense of joyriding for which by now, during two tours in the Wyoming State Penitentiary, he has been more than adequately punished and not rehabilitated in any regard. *See* Wyo. Const. art. 1, § 15.

Whatever the taxpayer burden for his support and maintenance at the penitentiary may be, Engle will be released as neither reformed nor mentally treated to cure his long-standing, clearly obvious illness. Required medical care and needed occupational training aside, in my opinion, this unfortunate individual simply did not commit a vehicle taking offense with intent to either abandon his existence in Casper or permanently deprive the owner of the use of the vehicle. *See* Comment, *Mens Rea: The Impasse of Law and Psychiatry*, 26 Gonzaga L.Rev. 613 (1990–91).

How we get to this second conviction and extended prison sentence for this mentally

disturbed near twenty-nine year old man as a felony offense conviction is no more justified by the technical issues now presented in this appellate briefing. This is particularly true with the exercise of judicial discretion which limited Engle's expert witness from giving clearly appropriate expert testimony. That inquiry addressed this mentally disturbed individual's capacity to develop the specific intent necessary to commit the offense.

Again, I see a two standard justice result with what is permissible for the prosecution is deemed unacceptable within even equal protection and due process constitutional guarantees for the defendant to use to defend. *Price v. State,* 807 P.2d 909, 917 (Wyo.1991), Urbigkit, J., dissenting; Lively and Plass, *Equal Protection: The Jurisprudence of Denial and Evasion,* 40 Am.U.L.Rev. 1307 (1991). *Cf. Brown v. State,* 736 P.2d 1110, 1117 (Wyo.1987), Urbigkit, J., dissenting; *Scadden v. State,* 732 P.2d 1036 (Wyo.1987); and *Lessard v. State,* 719 P.2d 227 (Wyo.1986).

Furthermore, in the almost frantic search to affirm this second conviction, I cannot agree that the self-standing hearsay so-called medical report from the absent prosecutorial witness should have been utilized as proving evidence of sanity when the powerful process for truth's search—cross-examination—was denied. *Holm v. State,* 404 P.2d 740 (Wyo.1965); *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). If the patient's (now convict) historical record of mental treatment means anything, then it is most likely that the hospital evaluation report is not even either true or valid.

The report was, of course, hearsay and I fail to find clear legislative intent or deeply rooted tradition justifying admissibility under standards derived from the Fourteenth Amendment of the United States Constitution, decisions of the United States Supreme Court and certainly not under the rights appropriately providing protection as included in the Wyoming Constitution. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Douglas v. State of Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

What we have here is the State's hearsay evidence elicited from the partisan representative from the Wyoming State Hospital and Engle's expert witness denied equivalent testimonial opportunity even when appearing in person. This case personifies a blatant violation of constitutional rights implicit in confrontation of which cross-examination is an important constituent. *Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

I would reverse the conviction and remaining sentence with the observation that Engle has been adequately punished for his disturbed mind and drinking-caused crime. As for reformation, preventive medical attention and occupational training, it would certainly serve society better to have the costs expended for constitutional rehabilitation instead of warehousing by incarceration.

As we now have this case defined and delineated, undoubtedly when Engle is released from penitentiary confinement without proper care or training, as the unfortunate human being that he is, he will in generally unsocial behavior and suffering from severe mental instability then return to the kinds of problems from which all of this arose. We do another tour with a historical refrain only too well known—the Wyoming State Hospital's representative provides the conclusion that the accused is mentally competent so that the Wyoming State Penitentiary, not the state's mental health facility, will be the recipient of his present and intermediate future, care, custody and control. Justice fails in both criminal law and mental health responsibilities of our society.

I dissent.